STATE FARM FIRE AND CASUALTY COMPANY, Appellant-Respondent, v ARGEO LIMAURO, as Administrator of the Estate of MAUREEN LIMAURO, Deceased, et al., Respondents, and AETNA CASUALTY AND SURETY COMPANY, Respondent-Appellant.

Second Department, October 22, 1984

APPEARANCES OF COUNSEL

*Diamond, Rutman & Costello (Seligson, Rothman & Rothman [Martin S. Rothman, Mark S. Silberglitt* and *Alyne I. Diamond]* of counsel), for appellant-respondent.

*Salvatore A. Mazzoni (Michael Majewski* and *Joseph D. Ahearn* of counsel), for respondent-appellant.

OPINION OF THE COURT

O'CONNOR, J.

This appeal involves the respective obligations of two insurance companies under liability insurance policies each had issued.

On September 28, 1980, an automobile owned by Catillo LiMauro and operated by Vincent Navarro was involved in a motor vehicle accident in Southampton, New York, with an automobile owned by Kinney Auto Rental Corp. and operated by John Fagan. Maureen LiMauro, a passenger in the LiMauro vehicle, was killed in the accident and through her administrator commenced a wrongful death action for $2,000,000 against LiMauro, Navarro, Kinney Auto Rental and Fagan. The latter, the driver of the other vehicle, commenced a separate personal injury action for $1,000,000 against Catillo LiMauro and Navarro.

At the time of the accident three applicable insurance policies were in effect. The first was a "Car Policy" issued to Catillo LiMauro by State Farm Mutual Automobile Insurance Company (State Farm Mutual) covering the subject automobile and insuring against bodily injury up to $100,000 per person and $300,000 per accident. It is not disputed that this policy, which lists as insured the owner of the automobile as well as "any other person while using such a car if its use is within the scope of consent", provided primary coverage in this instance for both owner LiMauro and Navarro who was operating the automobile with the owner's consent.

Also in effect at the time of the accident was a "Family Automobile Policy", which had been issued by Aetna Casualty and Surety Company (Aetna) to Navarro, the operator of the LiMauro vehicle. This policy, with limits of $100,000/$300,000, contained the following escape or "Other Insurance" clause:

"Other Insurance

"If the Insured has other insurance against a loss covered by the Liability Coverage of this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance*" (emphasis supplied).

The term "non-owned automobile" was defined in the policy as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile".

The third and final applicable policy, a "Success Protector Policy" for $1,000,000, had been issued to Catillo LiMauro by State Farm Fire and Casualty Company (State Farm Fire).* This policy provided liability coverage (including automobile, recreational vehicle and comprehensive personal) for the named insured as well as "any person while using an automobile, watercraft or aircraft owned by * * * the Named Insured * * * with [his] permission" and required as a condition of the policy that minimum underlying coverage be maintained (in the amounts of $100,000/$300,000 for automobile and recreational vehicle liability). The policy also contained an "Other Insurance" clause, which provided:

"Other Insurance

"If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the

---

* State Farm Fire is apparently a separate entity from and should not be confused with State Farm Mutual, the conceded primary carrier at bar.

sum of the Retained Limit — Coverage L and the limit of liability hereunder), *the insurance hereunder shall be in excess of, and shall not contribute with, such other insurance"* (emphasis supplied).

The term "Retained Limit — Coverage L" was defined as the greater of the limits of liability of the required underlying coverage or $250 if the underlying coverage was inapplicable to the occurrence.

Following commencement of the Fagan and LiMauro lawsuits, State Farm Fire instituted the instant action seeking a declaration that its success protector policy should come into effect only after the limits of the primary State Farm Mutual policy and those of the Aetna policy were first exhausted. In its answer, Aetna urged the court to declare contrariwise that its policy came into effect only after exhaustion of the primary and the success protector policies. Alternatively, it contended that its policy and the success protector policy became concurrent excess policies after depletion of the primary coverage.

Special Term, in effect, adopted the latter position. It reasoned that the excess coverage clauses contained in the Aetna and State Farm Fire policies canceled each other out, requiring the two companies to "contribute ratably on the issue of liability after exhaustion of the primary coverage afforded by * * * State Farm Mutual". We cannot agree with the court's determination and accordingly now reverse.

■ As a preliminary matter, we note that Special Term was not in error in entertaining a declaratory judgment action even though the Aetna and State Farm Fire policies provide excess coverage and the underlying liability actions against LiMauro and Navarro had not yet proceeded to judgment in excess of the primary coverage. It is, of course, well established that a declaratory judgment may not be granted if it will only result in an advisory opinion; there must be a "genuine legal dispute" and hence a request for such relief is "premature if the future event is beyond the control of the parties and may never occur" (*New York Public Interest Research Group v Carey*, 42 NY2d 527, 530, 531; see, also, *Prashker v United States Guar. Co.*, 1 NY2d 584). Plainly, the inability of the courts

to entertain a declaratory judgment action in these circumstances is not merely a matter of discretion, as is generally true with respect to entertaining such actions, but is one of law (see *Combustion Eng. v Travelers Ind. Co.*, 75 AD2d 777, 778-779, affd 53 NY2d 875). Be that as it may, it is long settled that a declaratory judgment action against insurers, including excess carriers, is permitted prior to judgment where the "judgments likely to be recovered" in the underlying claims would amount to more than the excess floor (*Post v Metropolitan Cas. Ins. Co.*, 227 App Div 156, 157, affd 254 NY 541) or the "potential liability" might well reach into the excess coverage (*Hollander v Nationwide Mut. Ins. Co.*, 60 AD2d 380, 382; see, also, *Combustion Eng. v Travelers Ind. Co., supra;* 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.09b). We believe that these authorities control at bar.

The State Farm Mutual car policy, providing primary coverage for LiMauro and Navarro, limited recovery for bodily injury to $100,000 per person per accident. The underlying wrongful death action, however, asserted a $2,000,000 claim of liability against LiMauro, Navarro and others, while the personal injury action instituted by Fagan asserted a $1,000,000 claim solely against LiMauro and Navarro. Under these circumstances, it can hardly be doubted that the liability, if any, against LiMauro and Navarro will exceed the excess floor and reach into the excess coverage (see *Post v Metropolitan Cas. Ins. Co., supra; Hollander v Nationwide Mut. Ins. Co., supra*), especially where, as here, Fagan's verified supplemental bill of particulars, besides detailing serious injuries, lists special damages alone in excess of $50,000, and where Navarro, the other driver, has allegedly admitted under oath to having no recollection of stopping at a stop sign against him and has had his license suspended after a hearing before a motor vehicle examiner. In our view, then, a judicial declaration as to the priority of payment from the excess insurance policies is now proper. Indeed, recently this court, in pointing out the utility of the declaratory judgment action, noted that "[o]ftentimes it is the most expeditious and fairest method by which an insurer can secure an advance determination as to its contractual duty

to defend or indemnify one of its policyholders" (*Monaghan v Meade,* 91 AD2d 1014, 1015; see, also, *Maryland Cas. Co. v Pacific Co.,* 312 US 270; Night, Determination of Liability Insurance Policy Defenses by Declaratory Actions, 8 Syracuse L Rev 27).

■ Turning to the merits of the dispute, the general rule, as correctly noted by Special Term, is that "where there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance" (*Lumbermens Mut. Cas. Co. v Allstate Ins. Co.,* 51 NY2d 651, 655; see, also, *Federal Ins. Co. v Atlantic Nat. Ins. Co.,* 25 NY2d 71; *Atlantic Mut. Ins. Co. v Atlantic Nat. Ins. Co.,* 38 AD2d 517, mot for resettlement granted 39 AD2d 530, affd 33 NY2d 817; *Jefferson Ins. Co. v Glens Falls Ins. Co.,* 88 AD2d 925, 926). It has nonetheless been recognized that policies affording excess insurance do not necessarily cover the same risk and that parties to insurance contracts may well bargain for different or several tiers of excess coverage, rendering the general rule inapplicable in those cases (see *Lumbermens Mut. Cas. Co. v Allstate Ins. Co., supra,* pp 655-656; see, also, *Public Serv. Mut. Ins. Co. v Fireman's Fund Amer. Ins. Cos.,* 82 AD2d 403, affd 55 NY2d 868). An examination of the policies at issue here leads to the unavoidable conclusion that they did not, in fact, cover the same insurable risk and that Special Term erred by applying the general rule under the circumstances.

By its terms, the Aetna policy issued to Navarro was basically a primary automobile liability contract which afforded nonprimary or excess coverage in this case because Navarro was driving a *nonowned* automobile, triggering the escape or "Other Insurance" clause of the policy ("the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance"). By contrast, the State Farm Fire Success Protector Policy, issued to LiMauro and also including driver Navarro as an insured, specifically provided that its coverage "shall be in excess of, and shall not contribute with" any other collectible insurance available to the insured. Indeed, the State

Farm Fire policy recited that it would "indemnify the Insured for *ultimate net loss* which the Insured shall become legally obligated to pay as damages, in excess of the Retained Limit — Coverage L" (emphasis supplied), and, as already indicated, required the maintenance of underlying primary liability coverage. It is further to be noted that no specific automobile was identified in the policy, which applied not only to an automobile but also to watercraft or aircraft under designated conditions. Clearly, the success protector policy was not just a simple excess policy; it was specifically structured to provide multiple high-risk coverage in excess of any provided by other available collectible insurance — i.e., last resort coverage, commonly referred to as "umbrella" or "catastrophe" coverage (see 8A [rev vol] Appleman, Insurance Law and Practice, § 4909.85).

Unlike the situation in *Jefferson Ins. Co. v Glens Falls Ins. Co.* (88 AD2d 925, *supra*), where the insurers were held to have insured the same risk, here Aetna bargained to insure a primary/secondary risk, whereas State Farm Fire bargained for residual loss coverage in every event, true excess over and above any type of primary excess coverage, excess provisions arising in regular policies, or escape clauses. That State Farm Fire intended to assume contingent excess liability, and not secondary ratable contribution, is further evidenced by the policy's large liability of $1,000,000 and relatively modest premium of $144. (By contrast, the premium on the primary State Farm Mutual policy, which merely provided $100,000/$300,000 coverage, was only slightly less or $119.94). Thus, the only interpretation which can be reasonably adopted from a reading of the subject insurance contracts is that once the primary insurance has been exhausted, Aetna should next contribute to the judgment pursuant to its policy issued to Navarro; only after this policy has been depleted should the success protector policy be summoned into effect (see *Allstate Ins. Co. v Employers Liab. Assur. Corp.*, 445 F2d 1278, 1284). Any other interpretation would "effectively deny and clearly distort the plain meaning of the terms of the policies of insurance here involved" (*Lumbermens Mut. Cas. Co. v Allstate Ins. Co.*, 51 NY2d 651, 655, *supra*).

In view of the policies' plain meaning, we simply cannot accord any weight to the arguments advanced by Aetna to

support its contention that its policy should come into effect after the exhaustion of the success protector policy, or alternatively, provide excess coverage concurrent with that policy. Concededly, the success protector policy does not contain the terms "umbrella" or "catastrophe". But that hardly means the policy was not intended as last resort coverage. It bears remembering that the policy does talk of "ultimate net loss". More fundamentally and in any event, form should not be exalted over substance, and a functional analysis compels the conclusion that this policy in fact provided last resort coverage, clearly purporting to be subordinate to every other type of insurance (see *Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co.*, 45 NY2d 551, 558; see, also, *Goldberg v Sitomer, Sitomer & Porges*, 97 AD2d 114, 116-117). Nor does the fact that Navarro was an insured under the success protector policy disprove in any way that the policy was intended to be one of last resort. Indeed, if Navarro were not covered under the afore-mentioned policy, the instant action would never have arisen.

Finally, we feel obliged to add a word about applicable law. After submission of the main affidavits to Special Term, State Farm Fire in reply raised the possibility that Florida law, not New York law, should govern the instant case, noting that its policy "was written in Florida and governed by the laws of the State of Florida where the contract was made". Special Term chose to ignore the argument as improperly raised in reply or reject it *sub silentio* by exclusively applying New York law. Neither State Farm Fire's preargument statement nor its principal appellate brief pressed the issue. In its reply brief, however, it stated, *inter alia,* that "not only New York law but indeed Florida law (which should govern) strongly support [its] contention that the 'protector policy' at bar was a catastrophe policy of last resort". Aetna has moved to strike the references to Florida law, contending that State Farm Fire should not be allowed to raise the applicability of Florida law for the first time in reply when it had no opportunity to respond.

It is beyond cavil that raising a new substantive issue of law for the first time in a reply brief is improper, and in

such circumstances an order to strike is the proper remedy (see *Garlasco v Smith,* 250 App Div 534, 536, affd 276 NY 666; *Ardolino v Reinhardt,* 128 App Div 339). We need not, however, consider whether raising in a reply brief an issue submitted in reply at Special Term constitutes raising a new issue for the first time, for a reading of the reply brief convinces us that State Farm Fire is resigned to the application of New York law and merely cites Florida cases as persuasive, not controlling, authority. As such, there was nothing improper about the references, and the motion to strike is denied. In any event, as has been suggested, even assuming, *arguendo,* that Florida law were deemed to be applicable at bar, the result would be no different from that already obtained, and the success protector policy would still be construed as providing coverage of last resort (see *State Farm Mut. Auto. Ins. Co. v Universal Atlas Cement Co.,* 406 So 2d 1184 [Fla App], petition for review den 413 So 2d 877 [Fla]; *Aetna Cas. & Sur. Co. v Beane,* 385 So 2d 1087 [Fla App]). Indeed, courts of other jurisdictions that have considered the issue here presented have reached the same conclusion as at bar (see *Allstate Ins. Co. v Employers Liab. Assur. Corp.,* 445 F2d 1278, *supra* [CA5th construing Ill law]; *Safeco Ins. Co. v Insurance Co. of North Amer.,* 522 SW2d 867 [Tenn]; *Prudential Prop. & Cas. Ins. Co. v New Hampshire Ins. Co.,* 164 NJ Super 184; *Arizona Joint Underwriting Plan v Glacier Gen. Assur. Co.,* 129 Ariz 351; *United States Fire Ins. Co. v Maryland Cas. Co.,* 52 Md App 269; *Liberty Mut. Ins. Co. v United States Fire Ins. Co.,* 590 SW2d 783 [Tex App]).

Accordingly, the judgment should be reversed and it should be adjudged and decreed that Aetna will contribute to any underlying judgment in the instant matter upon exhaustion of the primary insurance coverage and only upon exhaustion of Aetna's policy will the policy issued by State Farm Fire be summoned into effect.

Titone, J. P., Lazer and Mangano, JJ., concur.

Judgment of the Supreme Court, Suffolk County, dated July 27, 1983, reversed, on the law, with costs to the State Farm Fire and Casualty Company, and it is adjudged and decreed that Aetna Casualty and Surety Company should

contribute pursuant to its policy to any underlying judgment in this matter upon exhaustion of the primary insurance coverage and that only upon exhaustion of Aetna's policy should the insurance policy issued by State Farm Fire be summoned into effect.