RELIANCE INSURANCE COMPANY v. LEXINGTON INSURANCE COMPANY

No. 8714SC121

(Filed 3 November 1987)

1. **Rules of Civil Procedure § 56.7— denial of motion for summary judgment—trial on the merits—appeal moot**

An appeal from the denial of a motion for summary judgment was moot where a decision on the merits was reached through trial.

2. **Insurance § 85— action between two insurance companies to determine coverage—borrowed fire truck**

In an action between two insurance companies to determine the order of payment on policies for a settlement arising from a collision involving a County owned fire truck driven by a City employee, the City employee was an additional insured under the City policies where the dispositive issue was whether the City had borrowed the County's fire truck; the City and County had had an oral agreement that the City would man and maintain the truck with the County reimbursing the City for expenses; the City controlled the truck in every aspect of its workday; the City determined who would man the truck and when it would go out; and the County did not exercise any control over the vehicle until it arrived at the scene of a County fire.

3. **Insurance § 93— three insurance policies—excess insurance—rule of mutual repugnance**

In an action between insurance companies to determine the order of payment of a settlement after a collision between a private vehicle and a fire truck owned by the County and driven by a City employee, plaintiff's first policy was a primary policy and was to pay its full face amount, while plaintiff's second policy and defendant's policy, which were both excess policies, were to pay half the remaining amount under the rule of mutual repugnance. It was not necessary to decide whether plaintiff's second policy and defendant were to share pro rata according to maximum policy limits or simply share the judgment equally because the result would be the same under either rule.

APPEALS by plaintiff and defendant from *Battle, Judge.* Judgment entered 9 September 1986 in Superior Court, DURHAM County. Heard in the Court of Appeals 22 September 1987.

The City of Durham (City) and the County of Durham (County) have had an oral agreement by which the single County owned fire truck was housed and maintained at a City fire station and operated by City employees. Under the agreement, the City could use the fire truck in fighting fires within the City so long as it was not needed in fighting a fire within the County's jurisdiction.

This agreement was in effect on 9 December 1982 when Robert Perera, a City employee driving the County's fire truck to a fire in the County, collided with a pickup truck driven by Mr. Thomas Richards and his wife. Mr. and Mrs. Richards sustained severe injuries as a result of the collision. The Richards both sued the City and the County but subsequently dismissed their complaint against the City with prejudice. They settled their claim against the County and Robert Perera through a consent judgment in their favor for $675,000.

The insurance companies insuring the City and County disagreed among themselves as to their respective obligations and, particularly, the order of payment among the policies to satisfy the judgment. A brief synopsis of each insurance policy follows:

On 1 February 1982 plaintiff Reliance Insurance Company (Reliance) wrote the first of two liability insurance policies (Reliance #1) insuring the City, its vehicles and its employees in the course and scope of their employment with the City. The maximum amount of coverage for any accident or loss was $500,000. Titled a "Business Auto Policy," the policy covered the City and the City's vehicles. The policy also covered those vehicles the City "own[ed], hire[d], or borrow[ed]." Additionally, the policy provided that for any covered vehicle not owned by the City, the insurance coverage was excess to any other collectible insurance.

On 2 February 1982 plaintiff Reliance wrote a second liability policy (Reliance #2) for the City. The policy, denominated an "excess-umbrella" policy, insured the City and its employees in the course and scope of their employment for losses in excess of $500,000 up to a maximum of $5,000,000. Reliance limited its liability under this policy through a limit of liability clause which stated that:

> The company shall only be liable for the ultimate net loss the excess of either
>
> (a) the amount applicable under the underlying insurances as set out in Item 3 of the Declarations,
>
> or
>
> (b) the amount of ultimate net loss stated in Item 4 of the Declarations in respect of each occurrence not covered by said underlying insurances.

Item 3 of the Declarations listed the Reliance #1 policy.

On 12 February 1982, South Carolina Insurance Company (South Carolina) wrote a liability policy insuring the County and its employees. The maximum amount of coverage afforded by South Carolina's policy was $100,000. All parties stipulated that South Carolina's policy was primary. Consequently, South Carolina paid its maximum coverage into the settlement pool and is not involved in this litigation.

On 19 October 1982 the County further insured itself through Lexington Insurance Company (Lexington). Lexington wrote a liability insurance policy, denominated an "umbrella liability" policy, covering the County and its employees for losses in excess of $250,000 up to a maximum of $5,000,000. Just as Reliance had limited its liability under Reliance #2, Lexington limited its liability in the following limit of liability clause:

> The Company shall be liable only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:
>
> (1) the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other underlying insurance collectible by the insured; or
>
> (2) the amount stated in Item 3A2 of the Declarations as the result of any one occurrence not covered by such underlying policies or insurance. . .

The South Carolina policy was listed in Schedule A.

South Carolina, Reliance, and Lexington each paid sums into a pool to satisfy the Richards' claims. South Carolina paid the full amount of its policy, $100,000. Reliance paid $500,000 into the settlement pool and Lexington paid the remaining $75,000. Reliance and Lexington reserved their rights against each other as to the amount due from each and the order of payment from among the insurance policies.

Reliance brought this action seeking indemnification from Lexington for the sums it paid in satisfaction of the judgment. In the pre-trial order, the parties stipulated that the County was the named insured under the South Carolina and the Lexington poli-

cies. Robert Perera was an additional insured under those same policies with respect to this accident. The County was not insured under either Reliance policy. Reliance argued that Robert Perera was not an additional insured under either of its policies because the County-owned fire truck he was driving was not a vehicle which the City hired or borrowed.

Thereafter, plaintiff moved for summary judgment on two issues: whether the City had either hired or borrowed the County fire truck and the order of payment among the insurance policies. The trial court denied summary judgment as to the first issue. Determining that the second issue was a question of law, Judge Battle's order "concluded that all three policies are excess policies, [and] that payment of the amount in excess of $250,000.00 should be prorated among the policies. . . ." The case then proceeded to trial. At the conclusion of plaintiff's evidence, defendant moved for a directed verdict on the "hired or borrowed vehicle" issue which was denied. At the conclusion of all the evidence, both parties moved for a directed verdict. The trial court denied plaintiff's motion and granted defendant's motion. Plaintiff appeals the denial of its summary judgment motion, the granting of defendant's directed verdict motion, the denial of its directed verdict motion, and the judgment as to the order of payment. Defendant appeals the court's judgment concerning the order of payment among the policies.

*Faison, Brown, Fletcher & Brough by O. William Faison, Reginald B. Gillespie, Jr. and Thomas N. Cochran for the plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice by Hada V. Haulsee and Allan R. Gitter for the defendant-appellant.*

EAGLES, Judge.

This case involves three insurance policies and two insurance companies and determination of their respective rights and obligations among themselves for previously paid damages. There are three issues raised on appeal: (1) was plaintiff's summary judgment motion properly denied; (2) was the trial court's grant of defendant's directed verdict motion correct; and (3) what is the order of payment among the three remaining insurance policies.

The summary judgment issue is moot. As to the directed verdict issue, the trial court correctly granted a directed verdict in favor of defendant on the "borrowed" vehicle issue. The trial court erred as to the order of payment among the policies and, accordingly, we reverse as to that issue.

### A

[1] Plaintiff assigns as error the trial court's denial of its summary judgment motion. We note that denial of a summary judgment motion is interlocutory and that the proper method of review before appeal of the case is through a writ of certiorari. *Carr v. Carbon Corp.*, 49 N.C. App. 631, 272 S.E. 2d 374 (1980), *disc. rev. denied*, 302 N.C. 217, 276 S.E. 2d 914 (1981). The purpose of summary judgment is to reach an early decision on the merits where there is no genuine issue of fact and the movant is entitled to judgment as a matter of law, *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972). Once a decision on the merits is reached through a trial, review of the denial of summary judgment is improper. *Harris v. Walden*, 314 N.C. 284, 333 S.E. 2d 254 (1985). Accordingly, plaintiff's first assignment of error is without merit.

### B

[2] Plaintiff's second assignment of error concerns the trial court's granting a directed verdict in favor of the defendant. The defendant's motion for directed verdict presents whether the evidence is sufficient for submission to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). Furthermore, a directed verdict may be granted when facts are no longer at issue, *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971), and the issue submitted is a question of law. *Jones v. Development Co.*, 16 N.C. App. 80, 191 S.E. 2d 435, *cert. denied*, 282 N.C. 304, 192 S.E. 2d 194 (1972). In ruling on defendant's motion, the evidence must be considered in the light most favorable to the plaintiff. *Kelly*, 278 N.C. at 153, 179 S.E. 2d at 396.

The issue here is whether the truck was "borrowed" as that term is used in Reliance #1. Robert Perera is an additional insured under Reliance #1 only if the fire truck can be considered to be owned, hired, or borrowed by the City. The County, not the City, owns the fire truck. The parties neither briefed nor argued the "hired" issue and, therefore, it is waived. N.C.R. App. Proc.

10(a). The dispositive issue, then, is whether the City "borrowed" the County's fire truck. When a term, such as "borrowed," is not specifically defined in the contract itself, the meaning of language in an insurance policy is a question of law. The term must be given the meaning most favorable to the insured consistent with its use in ordinary speech. *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518 (1970).

Webster's Third New International Dictionary defines "borrow" to mean:

> 1. to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender: obtain the temporary use of. . . .

This implies that when something is borrowed the borrower assumes control of the object. *F & M Schaefer Brewing v. Forbes Food Division*, 151 N.J. Super. 353, 376 A. 2d 1282 (1977).

The basic facts here are not in dispute. The County owned this particular fire truck, which was known as Engine 13. The oral agreement between the City and County provided that the City would man and maintain the truck. In exchange, the County agreed to reimburse the City for the expenses incurred in this arrangement. The City trained and clothed the fire fighting crews. The County reimbursed the City for the training and uniforms of those crews manning Engine 13. The County never knew which of the City's personnel were manning its fire truck. The City decided all personnel questions of this type. Additionally, the City dispatcher issued all initial orders to each of the fire trucks, including Engine 13. The County fire marshal or the appropriate volunteer fire chief directed Engine 13 and its crew once it arrived at the scene of a fire within the County's jurisdiction. No city fire department supervisors responded to calls in the County. Engine 13 responded to fires within the City limits when necessary and when available.

Since no critical facts were disputed and the question was one of law, the trial judge properly refused to submit this issue to the jury. *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). Further, the trial court's determination that the County's fire truck, Engine 13, was borrowed by the City is adequately supported by

the evidence. Though the County owned the truck, the City con-
trolled Engine 13 in every aspect of its workday. The City deter-
mined who would man the truck and when it would go out. While
the truck could be released by the County from its obligation to
go to a County fire before it arrived, it was not until Engine 13
arrived at the scene of a County fire that the County exercised
any control over the vehicle. Accordingly, Robert Perera is an ad-
ditional insured under both Reliance policies.

## C

[3]  Both Reliance and Lexington assign as error the trial court's
determination of the order of payment among the three remaining
excess insurance policies. The contracts of insurance here were
not made between plaintiff and defendant, but between each of
them and third parties. Each policy is a contract between the
respective parties involved; the parties' intent must be examined
in order to properly construe each policy. Consequently, each
policy must be construed separately and irrespective of the
others to determine their effect on each other. *Allstate Insurance
Co. v. Shelby Mutual Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436
(1967) (hereinafter *Allstate*).

To begin we consider the first policy written, Reliance #1.
This Reliance policy, by its own terms, was primary insurance for
the City and its vehicles. The policy's "other insurance" clause
converted the coverage to excess in the event that the covered
vehicle was one not owned by the City, but rather one which the
City hired or borrowed. Generally, excess coverage "provides
that if other valid and collectible insurance covers the occurrence
in question, the 'excess' policy will provide coverage only for
liability above the maximum coverage of the primary policy or
policies." *Horace Mann Insurance Co. v. Continental Casualty Co.*,
54 N.C. App. 551, 555, 284 S.E. 2d 211, 213 (1981) (quoting 8A Ap-
pleman, Insurance Law and Practice Section 4909 (1981)).

The next policy written, Reliance #2, was written the follow-
ing day. This policy differed from Reliance #1 in that Reliance #2
was titled an excess-umbrella policy. Further, Reliance #2 covered
the City and its employees for general liability purposes, not
simply the City's vehicles and their drivers. The risks insured
were different.

Reliance #2's "other insurance" clause provided that in the event any other valid and collectible insurance was available to the City, this coverage (Reliance #2) was excess. Reliance #1 was excess coverage because the fire truck was "borrowed." Reliance #2 contained a limit of liability clause which exempted Reliance #2 from liability for losses to the extent covered by any policies set out in a referenced schedule. The Reliance #1 policy was set out as one of the underlying policies.

Later in February, the County contracted with South Carolina for a liability policy for the County, its vehicles and its employees. The maximum amount payable in one accident under the policy was $100,000. Both parties to this action acknowledge that South Carolina's policy was the primary policy in the underlying case and that South Carolina has promptly and properly paid $100,000 into the settlement pool.

Just as the City had done previously, the County then contracted for further liability protection. They contracted with Lexington for another liability insurance policy, an umbrella policy which would cover losses in excess of $250,000, but no more than $5,000,000. Just as Reliance had done in Reliance #2, Lexington limited its liability under the policy through its other insurance clause and through a limit of liability clause. Lexington's "other insurance" clause, substantially identical in language to Reliance #2, converted its policy to excess coverage in the event other valid and collectible insurance was available. Lexington's limit of liability clause, again substantially identical in language to Reliance #2, included the South Carolina policy on the appropriately referenced schedule.

Our research discloses but one North Carolina case which addresses the order of payment between competing excess clauses, *Alliance Mutual Insurance Co. v. New York Central Mutual Fire Insurance Co.*, 70 N.C. App. 140, 318 S.E. 2d 524 (1984) (hereinafter *Alliance*). There the court recognized that where two policies contain identical excess clauses, the rule of mutual repugnancy should control. The court stated that where the excess clauses were identical and no determination could be made as to whether one policy was primary, then the clauses were mutually repugnant and that coverage should be prorated between the policies. *Id. Alliance* is persuasive because the contrary result, giving full effect to identical excess clauses, would make

neither insurer liable since there is no way to determine from the documents which should pay first.

In other jurisdictions, the general rule, whether the excess clauses are identical or not, is "[w]here two or more policies provide coverage for the particular event and all the policies in question contain excess insurance clauses, it is generally held that such clauses are mutually repugnant and must be disregarded, rendering each insurer liable for a pro rata share of the judgment or settlement." Couch on Insurance 2d, Section 62:80 (1983).

A panel of the New York Supreme Court overruled a trial court's use of this general rule in a case strikingly similar to the present case. *State Farm Fire & Cas. Co. v. LiMauro*, 103 A.D. 2d 514, 418 N.Y.S. 2d 90 (1984), *aff'd on other grounds*, 65 N.Y. 2d 369, 482 N.E. 2d 13, 492 N.Y.S. 2d 534 (1985). *LiMauro* involved the order of payment among three policies written by State Farm Mutual Automobile Insurance Company (State Farm Mutual), Aetna Casualty and Surety Company (Aetna), and State Farm Fire and Casualty Company (State Farm Fire) respectively. The State Farm Mutual policy was determined to be primary coverage and paid its maximum coverage amount. The remaining two policies were both excess: Aetna's was excess because the vehicle involved was a non-owned vehicle, and State Farm Fire's was excess because of its other insurance clause which said the policy was excess if there were any other valid and collectible insurance. The court pointed out that Aetna's policy was excess only because of the circumstance of the insured driving a non-owned vehicle. Aetna bargained for and insured a primary/secondary risk; coverage that was intended, generally, to pay first in the event of liability. On the other hand, State Farm Fire bargained for and insured a contingent excess liability; coverage that was intended to pay only after a primary policy was exhausted. Further evidence of the differing risks insured was the significant difference in premium paid for the policy. The court ruled that where differing excess policies insured "different or several tiers of excess coverage" the general rule should not apply, *id.*, 103 A.D. 2d at 519, 481 N.Y.S. 2d at 93, and ordered that the Aetna policy be exhausted before State Farm Fire's policy should begin payment. This is consistent with the North Carolina rule of construing insurance policies independent of one another. *See Allstate*, 269 N.C. at 341.

As between Reliance #1 and Reliance #2, the only reasonable intent to be drawn from the insurance contracts was that Reliance #1 would be exhausted before Reliance #2 would pay any judgments or losses. The Reliance #2 policy demonstrates this proposition by listing Reliance #1 as an underlying policy under its limit of liability clause. Additionally, the only reasonable intent to be drawn from Lexington's contract with the County was that Lexington would pay claims only at some point after South Carolina's policy was exhausted. Lexington's limit of liability clause lists the South Carolina policy as an underlying policy.

Though each of the three policies was excess, they did not cover the same risk. The dissimilar premiums paid for each policy make this point dramatically. Reliance #1 commanded a larger premium as it was anticipated that, generally, it would be a primary policy. Only as to any vehicle the City hired or borrowed would the policy be excess. On the other hand, both Reliance #2 and Lexington insured a larger risk specifically contingent on another policy first paying. Both Reliance #2 and Lexington were written to protect against the possibility of liability losses up to five million dollars. Both policies were to take effect only upon losses or a judgment reaching a certain minimum level. The losses below this minimum level were to be covered by the underlying insurance policies set out in each policy's limit of liability clause. Reliance #2 and Lexington insured the same kind of risk—contingent excess liability. Reliance #1 insured a primary/secondary risk.

Consequently, we hold that among the three policies here at issue, Reliance #1 should pay first as Reliance #1 insured a risk which Reliance knew would have to be paid before Reliance #2 came into effect. Further, since there are no essential differences between Reliance #2 and Lexington, we hold that Reliance #2 and Lexington should be treated equally. Under Reliance #1, Reliance shall pay its full face amount, $500,000. The remaining portion of the judgment shall be paid $37,500 by Reliance #2 and $37,500 by Lexington. Since the result is the same under either rule, we decline to decide here whether Reliance #2 and Lexington share prorata according to maximum policy limits or simply share the judgment equally. The judgment below must, therefore, be reversed and the case remanded for the entry of a judgment consistent with this opinion.

Reversed and remanded.

Judges WELLS and MARTIN concur.