DAVIS, Appellant,

v.

CONTINENTAL INSURANCE COMPANY, Appellee.

DAVIS, Appellee,

v.

CONTINENTAL INSURANCE COMPANY, Appellant.

[Cite as *Davis v. Continental Ins. Co.* (1995), 102 Ohio App.3d 82.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 94APE08–1129, 94APE08–1234.

Decided March 23, 1995.

*Luper, Wolinetz, Sheriff & Neidenthal, Stanley L. Myers* and *Eugene R. Butler,* for appellant Lisa Davis.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A.,* and *Timothy P. McCarthy,* for appellee Continental Insurance Co.

*Tyack & Blackmore Co., L.P.A.,* and *Thomas M. Tyack,* for intervening plaintiff-appellee Brian Kirk.

---

PEGGY BRYANT, Judge.

Plaintiff-appellant, Lisa Davis, appeals from a judgment of the Franklin County Court of Common Pleas finding that she is not entitled to underinsured motorist coverage under a policy defendant-appellee, Continental Insurance Company ("Continental"), issued to the Diocese of Columbus ("Diocese"). Continental appeals from the same judgment also finding that Davis's passenger, Brian Kirk, and his mother, Sheila Lilley, as guardian and next-of-kin, are entitled to underinsured motorist coverage under the same policy.

According to the facts stipulated between the parties, on May 25, 1990, St. Mary Magdalene School, a school operated under the Diocese, had a class trip to the Columbus Symphony Orchestra at the Ohio Theater. The trip left St. Mary Magdalene School at 11:30 a.m. and was scheduled to return about 2:00 p.m. In order to participate in the trip, students were required to have parental permission. In that regard, Lisa Davis signed a permission slip for her daughter, but also indicated that she would be able to drive for the field trip. When Davis's daughter returned the permission slip to her teacher, the teacher told her to tell Davis that Davis would be driving.

While Davis was driving students to the Ohio Theater, the vehicle she operated was negligently struck by a vehicle Reva Callen operated, resulting in injuries to the occupants of the car Davis was driving. Callen was an underinsured driver as to those injuries.

The parties further stipulated that Continental issued a policy to the Diocese that was in force and effect on May 25, 1990 ("policy"), that the Diocese signed no written waiver of uninsured motorist coverage and/or underinsured motorist coverage, and that all vehicles owned by the Diocese are principally garaged in Ohio.

According to Davis's complaint, following the accident she discovered that Callen had inadequate liability coverage. Although plaintiff submitted an underinsured motorist claim to Continental, Continental denied the claim, asserting that underinsured motorist coverage was not available for the May 25, 1990 accident under the terms of the policy. As a result, plaintiff filed this declaratory judgment action on December 5, 1990, asking the court to declare whether Davis and her passengers have underinsured motorist coverage under the policy and whether the policy complies with R.C. 3937.18.

Brian Kirk, a passenger in Davis's vehicle at the time of the May 25, 1990 accident, as well as his mother, Sheila Lilley, as guardian of Kirk, moved to

intervene as plaintiffs in the action Davis commenced against Continental. The trial court granted the motion.

On December 8, 1992, Continental filed a motion for summary judgment, contending that underinsured motorist coverage was unavailable to Davis or to Kirk under the terms of the policy. Following full briefing on the motion, the trial court determined that under the policy language, Kirk was entitled to underinsured motorist coverage, but Davis was not. Believing that the trial court had determined her lack of coverage on misinformation regarding ownership of the vehicle she was driving at the time of the accident, Davis filed a motion for reconsideration. The trial court, however, found that ownership of the vehicle Davis was driving was not dispositive under the language of the policy. Accordingly, the trial court overruled the motion for reconsideration and entered judgment in accordance with its original decision.

Davis appeals the trial court's determination, assigning the following errors:

"I. The trial court erred in granting Continental's motion for summary judgment where no express rejection of uninsured motorist benefits has been made.

"II. The trial court erred in finding that Continental's policy contained no express uninsured provision.

"III. The trial court erred in failing to address Davis' claim that she was a named insured."

Continental also appeals, assigning the following errors:

"I. The trial court erred in making a factual determination that the vehicle in question was a 'borrowed vehicle' and that Brian Kirk and Sheila Lilley were entitled to underinsured motorist coverage.

"II. The trial court erred in finding Sheila Lilley was entitled to underinsured motorist coverage.

"III. The trial court erred in implicitly holding that appellant must provide underinsured motorist coverage for vehicles [its insured] does not own."

The primary issue presented in the appeal of Davis and Continental is the extent of underinsured motorist coverage under the policy. Davis contends that the trial court erred in finding that she is not covered under the policy, while Continental asserts that the trial court erred in finding Kirk to be covered under the policy's terms.

Initially, we are compelled to note that the posture of the present case is somewhat skewed because, even though it involves an issue of underinsured motorist coverage under the policy, the parties submitted to the trial court only that portion of the policy which sets forth liability coverage. While the parties on

appeal do not dispute that an uninsured/underinsured section of the policy exists, for reasons which are not entirely clear that portion of the policy was not submitted for the trial court's review. As a result, the trial court examined the liability portions of the policy and extended underinsured motorist coverage to all who were insured under the liability provisions of the policy. With those as the underlying circumstances, the parties now ask this court to review the trial court's determination.[1]

In examining the liability portions of the contract, the trial court focused on the policy's definition of who is an insured. The policy provides:

"1. WHO IS AN INSURED

"The following are 'insureds':

"a. You for any covered 'auto'.

"b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

"(1) The owner or anyone else from whom you hire or borrow a covered 'auto'."

As those provisions apply to Kirk, the "you" in paragraph 1a refers to the Diocese; Kirk is not an insured under that definition. However, paragraph 1b covers anyone using, with the Diocese's permission, a covered auto which the Diocese owns, hires or borrows. Kirk was using a motor vehicle, in that he was riding in it. Further, the automobile in which he was riding was a covered auto under paragraph 1b, as the policy defines a covered auto under the liability provisions to include "any auto." Thus, the trial court's determination turned on whether the Diocese owned, hired or borrowed the vehicle Davis was driving.

In analyzing that issue, the trial court found that physical possession of the property is not a necessary predicate to borrowing. Rather, the trial court applied the definition of "borrow" found in Black's Law Dictionary (6 Ed.1990) 185: to "receive from another any article of property * * * or thing of value with the intention and promise to repay or return it or its equivalent." In applying that definition, the trial court concluded that the use of Davis's vehicle was a thing of value to the Diocese. Further, the court found that the Diocese had

---

1. The trial court's opinion finds that the policy provides both liability coverage and underinsured motorist coverage. Apparently the trial court concluded that underinsured motorist coverage was available because the cover sheet for that portion of the policy was attached to the liability portions and submitted as an exhibit to the trial court. However, because the provisions of the underinsured motorist coverage were not submitted for the trial court's consideration, the trial court ultimately premised its determination on R.C. 3937.18, concluding that if an insurance policy is issued with liability coverage, then the statute mandates uninsured and underinsured motorist coverage be provided in an equivalent amount, absent a waiver of those coverages. Because the Diocese did not sign a written waiver of uninsured or underinsured motorist coverage, the court found that coverage to exist under R.C. 3937.18.

control over the Davis vehicle's destination, and that after the trip was over, control of the vehicle's destination was returned to Davis.

Having no Ohio authority which addresses the issue, the parties differ in the definition of "borrow" which they urge us to apply to the facts of this case. While Davis and Kirk suggest that Davis's simply conferring a benefit on the Diocese is sufficient to support a finding that the Diocese borrowed her vehicle, Continental suggests that unless the Diocese takes physical possession of the vehicle, the Diocese has not borrowed the car under the policy terms. Both definitions create inequities.

To define "borrow" as encompassing every instance in which a policyholder receives some benefit from another's use of an automobile not owned by the policyholder suggests that when, for example, a friend gratuitously runs a casual errand for a policyholder, the policyholder has borrowed the automobile used for the errand. Such a definition is unworkable. Indeed, simply because the Diocese cannot conduct field trips without using private transportation does not suggest that the Diocese, merely by receiving some benefit, has borrowed the private automobiles used for the trip any more than a charitable organization, for example, borrows the automobiles of its volunteers who transport themselves to and from assigned tasks. See *Schroeder v. Bd. of Supervisors of Louisiana State Univ.* (La.1991), 591 So.2d 342.

On the other hand, to require that a policyholder actually have physical possession of a vehicle in order to have borrowed it is unduly restrictive. In that instance, by controlling every detail of the vehicle's use, a policyholder can in effect accomplish what physical possession would allow, but at the same time avoid the responsibility of insuring the vehicle under its policy. Indeed, the term "borrow" is next to the term "hire" in the policy. Typically, "hire" does not involve physical possession of the vehicle hired, but rather suggests remuneration for the use of it. While "borrow" differs from "hire" in that borrowing typically involves no remuneration for use of the article borrowed, we see no reason to require that "borrow" include physical possession, when "hire" does not. See *Travelers Indemn. Co. v. Swearinger* (1985), 169 Cal.App.3d 779, 214 Cal.Rptr. 383.

Rather, we adopt the definition set forth in *Schroeder* that "borrow" means "not only that one receives the benefit of the borrowed object's use, but also that the borrower receives temporary possession, dominion, *or* control of the use of the thing." (Emphasis added.) *Schroeder, supra,* 591 So.2d at 346. As a result, "some element of substantial control is generally understood to be included within the prevailing meaning of the act of borrowing * * *." *Id.*

No one disputes that the Diocese received a benefit by virtue of Davis's using the car for the school field trip; even under the definition we adopt, that is an element of "borrow." Further, the parties do not dispute that the Diocese did not have possession of Davis's car; physical possession, however, is not a necessary element of "borrow." Rather, the critical issue is whether the Diocese exercised dominion or substantial control over Davis's vehicle. While the trial court's opinion alludes to the control the Diocese exercised, the trial court's opinion is stated in only the most general terms. Moreover, the stipulated facts directly address neither the issue of control nor the particular facts on which the trial court relied to find the degree of control noted in its opinion.

Given the foregoing, we reverse the trial court's determination that the Diocese borrowed Davis's car for purposes of the field trip, and we remand the matter to the trial court to apply to the facts of this case the definition of "borrow" set forth in this opinion. Given the absence of facts submitted by the parties directed to the issue of control, the trial court at the same time will have the opportunity to allow the parties on remand to submit those facts necessary for the trial court to determine whether the Diocese exercised dominion or control over Davis's vehicle.

▪ The remaining issue is whether the trial court erred in finding that Davis is not covered under the terms of the liability portion of the policy. In defining who is an insured, paragraph 1b of the policy contains an exclusion: "(1) the owner or anyone else from whom you hire or borrow a covered 'auto.' " Thus, even if the trial court were to determine that the Diocese borrowed Davis's vehicle, under the exclusion contained in paragraph 1b(1) of the policy, Davis would not be an insured under the liability provisions.

Given the foregoing, Continental's first assignment of error is sustained to the extent stated; Davis's first assignment of error, to the extent it contends that the trial court erred in finding she is not an insured under the liability provisions of the policy, is overruled.

Davis's first two assignments of error, however, also suggest that the trial court erred in not considering the underinsured motorist provisions of the policy. Given that the trial court was not presented with that portion of the policy for its review, the trial court did not err in failing to consider it. Nonetheless, because this matter will be remanded to the trial court for reconsideration of the issue of whether the Diocese borrowed Davis's car, the trial court will at that time have the opportunity to consider the underinsured motorist provisions in the policy. Similarly, Davis asserts under her first and second assignments of error that the trial court erred in concluding that she is not entitled to underinsured motorist coverage, since, she contends, her vehicle is a covered auto under the liability portions of the policy. Davis's assignments of error, however, ask us to speculate

about the provisions of the policy's underinsured motorist coverage, and then determine whether they are valid when compared with the coverage provided by the liability portions of the contract. Given that neither the trial court nor this court has seen the underinsured motorist provisions of the policy, Davis's first two assignments of error are premature, and we decline to address them at this time.

Davis's third assignment of error asserts that the trial court erred in failing to address her claim that she was a named insured by virtue of her status as an agent of the Diocese on May 25, 1990. Much of Davis's argument under her third assignment of error is subsumed in the trial court's considering whether the Diocese exercised dominion or control over Davis's vehicle at the time of the accident. Because that issue is being remanded for the trial court's consideration, Davis's third assignment of error also is premature, and we likewise decline to address it.

Continental's second assignment of error asserts that the trial court erred in finding that Sheila Lilley is entitled to underinsured motorist coverage. Lilley is a party as the mother and guardian of Kirk. To the extent that Kirk is entitled to underinsured coverage, Lilley as his guardian is likewise entitled to coverage. However, because the issue of Kirk's coverage is being remanded for further consideration, Continental's second assignment of error is sustained only to that extent.

In its third assignment of error, Continental asserts that the trial court erred in finding that Continental must provide underinsured motorist coverage for vehicles the policyholder does not own. However, as noted above, the trial court considered the underinsured motorist coverage only by reference to the liability provisions, as the parties failed to provide to the trial court that portion of the policy which defined the underinsured motorist coverage. Because on remand the trial court will have the opportunity to examine the underinsured motorist coverage provisions and to reexamine its determination of the extent to which underinsured motorist coverage is available in this case, Continental's third assignment of error is premature, and we decline to address it as well.

Given the foregoing, Continental's first and second assignments of error are sustained to the limited extent set forth in this opinion, and Davis's first assignment of error is overruled to the extent indicated. Davis's first assignment of error in part, her second and third assignments of error and Continental's third assignment of error are premature and are not addressed in this opinion. Thus, we remand these matters to the trial court to reconsider, to the extent such a determination is necessary under the underinsured motorist provisions of the policy, the issue of whether the Diocese borrowed the vehicle Davis was driving,

and at the same time to determine the coverage afforded Kirk and Davis under those provisions.

*Judgment reversed*
*and cause remanded.*

CLOSE and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting by assignment.