[Cite as *Fed. Ins. Co. v. Executive Coach Luxury Travel, Inc.*, 2009-Ohio-5910.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

FEDERAL INSURANCE COMPANY,

    PLAINTIFF-APPELLEE,

                                CASE NO. 1-09-17

    v.

EXECUTIVE COACH LUXURY TRAVEL, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-

FEROEN J. BETTS, ETC., ET AL.,           O P I N I O N

    DEFENDANTS-INTERVENORS,
    APPELLANTS.

AMERICAN ALTERNATIVE
INSURANCE CORPORATION,

    PLAINITFF-APPELLEE,

                                CASE NO. 1-09-18

    v.

EXECUTIVE COACH LUXURY TRAVEL, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-           O P I N I O N

FEROEN J. BETTS, ETC., ET AL.,

    DEFENDANTS-APPELLANTS.

Case No. 1-09-17, 18

---

**Appeal from Allen County Common Pleas Court**
**Trial Court Nos. CV-2008-143 and CV 2008-156**

**Judgments Affirmed**

**Date of Decision:    November 9, 2009**

---

**APPEARANCES:**

*Janine T.  Avila* **for Appellant, Feroen J. Betts**

*Steven B. Ayers and Daniel I. Graham, Jr.* **for Appellees, American Alternative Insurance Corporation**

*D. John Travis* **for Appellee, Federal Insurance Company**

*Christine M. Bollinger* **for Appellee, Executive Coach Luxury Travel**

*John Smalley* **for Appellants Adkins, Holp, Grandey and Miller**

*David W. Stuckey* **for Appellee Arend**

*Stephen V. Freeze* **for Appellee Hartford Fire Insurance Co.**

*Michael Borer* **for Appellee Niemeyer**

*James E. Yavorcik* **for Appellant Berta**

*Douglas Desjardins* **for Appellant, Geneva Ann Williams**

**SHAW, J.**

{¶1} Defendant/Intervenors-Appellants Feroen J. Betts, Etc., et al. ("Intervenors") appeal from the February 25, 2009 Judgment Entry of the Court of Common Pleas, Allen County, Ohio, granting summary judgment in favor of Plaintiffs-Appellees Federal Insurance Company ("Federal") and American Alternative Insurance Corporation ("American") and denying the Intervenors' motion for summary judgment.

{¶2} This matter arises out of a bus crash occurring on March 2, 2007. Bluffton University's ("Bluffton") baseball team had been scheduled to play a series of games in Sarasota, Florida. Bluffton hired Executive Coach Luxury Travel, Inc. ("Executive Coach") to provide coach bus transportation for the players from Bluffton, Ohio, to the games in Sarasota, Florida.

{¶3} On March 2, 2007, the bus carrying the Bluffton baseball team was involved in a crash in Atlanta, Georgia. Five baseball players, bus driver Jerome Niemeyer ("Niemeyer"), and Niemeyer's wife were killed in the accident. Numerous other occupants of the bus were injured in the crash.

{¶4} At the time of the bus crash, Bluffton had insurance policies with three companies. First, there was a policy issued to Bluffton by Hartford Fire Insurance Company ("Hartford"). This policy (number 33 UUN UK8593) was a special multi-flex policy, with a commercial automobile coverage part with a

liability limit of $1 million. Second, Bluffton had a policy issued by American, a commercial umbrella policy numbered 60A2UB00024331, with a liability limit of $5 million. Finally, Bluffton was covered by a policy issued by Federal. The Federal policy was a commercial excess follow-form policy, numbered 7983-94-78, with a liability limit of $15 million.

{¶5} The terms of both the Federal and American policies state that they will not apply unless the terms of the underlying insurance apply. The Federal policy lists the American policy as the underlying insurance. The American policy refers back to the Hartford policy as the underlying insurance.

{¶6} On January 29, 2008, Federal and American filed separate complaints for declaratory judgment against Executive Coach and Niemeyer. Federal requested that "the Court declare that [Federal] does not owe Executive Coach and the Estate of Jerome A. Niemeyer excess liability insurance as to any bodily injury or wrongful death claim or suit arising out of the Motor Coach Accident." Specifically, Federal argued that Executive Coach and Niemeyer did not qualify as "insureds" under the policy

{¶7} Originally, these two actions were filed separately with the American action assigned case no. CV-2008-0156, and the action filed by Federal assigned case no. CV-2008-0143. However, these two actions were ultimately consolidated on February 28, 2008.

{¶8} In February, Intervenors filed motions to intervene in both cases. Also filed at the time of the motions to intervene were an answer and counterclaim. The trial court granted the motions to intervene on February 19, 2008. Several other Intervenors also joined the suit after the original motion.

{¶9} On March 17, 2008, Federal replied to the counterclaim of Intervenors. On March 26, 2008, American also replied to the counterclaim of Intervenors.

{¶10} On August 6, 2008, Federal amended its complaint. Intervenors filed an answer to Federal's amended complaint on September 9, 2008.

{¶11} In October of 2008, Feroen Betts ("Betts") mailed a subpoena to Hartford requesting the underwriting file for the policy at issue in this case, as well as the complete claims file for the claim at issue in this case. On November 14, 2008, Hartford filed a motion to quash the subpoena. On December 1, 2008, Intervenors filed a memorandum opposing Hartford's motion to quash. On December 1, 2008, the trial court issued an order quashing Betts' subpoena.

{¶12} On December 19, 2008, American filed a motion for summary judgment arguing that no genuine issue of material fact existed as to whether Executive Coach or Niemeyer were "insureds" under Bluffton's policy with American. Federal filed a similar motion on December 19, 2008.

{¶13} Also on December 19, 2008, Intervenors filed a motion for summary judgment arguing that Mr. Niemeyer was an insured. It also appears that on December 19, 2008 a Joint Stipulation of Facts was filed with the consent of all of the parties to this case.

{¶14} On January 30, 2009, Intervenors filed a motion in opposition to the motions for summary judgment filed by American and Federal. Also on January 30, 2009, American filed a motion in opposition to Intervenors motion for summary judgment.

{¶15} On February 17, 2009, Intervenors filed a reply brief in support of their motion for summary judgment. On February 17, 2009, American and Federal filed reply briefs in support of their own motions for summary judgment.

{¶16} On February 25, 2009, the trial court entered an order granting summary judgment in favor of American and Federal and denying the Intervenors' motion for summary judgment.

{¶17} Intervenors now appeal asserting three assignments of error.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT ERRED IN DETERMINING, AS A MATTER OF LAW, THAT AT THE TIME OF THE MARCH 2, 2007 CRASH, JEROME NIEMEYER WAS NOT OPERATING THE EXECUTIVE COACH BUS WITH THE "PERMISSION" OF BLUFFTON UNIVERSITY.**

**ASSIGNMENT OF ERROR II**
**THE TRIAL COURT ERRED IN DETERMINING, AS A MATTER OF LAW, THAT THE BUS OPERATED BY**

**JEROME NIEMEYER WAS NOT "HIRED" BY BLUFFTON UNIVERSITY AS THAT TERM IS USED IN THE HARTFORD POLICY.**

**ASSIGNMENT OF ERROR III**
**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT QUASHED THE DEFENDANT-INTERVENORS/ APPELLANTS' SUBPOENA SEEKING HARTFORD'S UNDERWRITING FILE AND CLAIMS FILE.**

{¶18} For ease of discussion, we elect to address Intervenors' first two assignments of error together. In these assignments of error, Intervenors argue that the trial court erred by rendering unduly restrictive interpretations of certain terms in the policies, which led to its grant of summary judgment in favor of American and Federal. Specifically, Intervenors argue that the trial court erred in finding that Niemeyer was not operating the coach "with the permission of Bluffton," and that neither Niemeyer nor the charter bus were "hired by Bluffton" under the plain and ordinary meaning of those terms within the Hartford policy.

{¶19} An appellate court reviews a grant of summary judgment independently, and without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. *Hasenfratz v. Warnement,* 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198.

{¶20} A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus. Additionally, Civ.R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶21} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence

on any issue which that party bears the burden of production at trial. See Civ.R. 56(E).

**{¶22}** In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

**{¶23}** "[A]n insurance policy is a contract between the insurer and the insured." *McDaniel v. Rollins,* 3d Dist. No. 1-04-82, 2005-Ohio-3079, at ¶ 31, citing *Wilson v. Smith,* 9th Dist. No. 22193, 2005-Ohio-337, at ¶ 9. The court must interpret the language in the insurance policy under its plain and ordinary meaning. *Id.* at ¶32, citing *Wilson,* 2005-Ohio-337, at ¶ 9. When the contract is clear and unambiguous, the court "may look no further than the four corners of the insurance policy to find the intent of the parties." *Id.* An ambiguity exists "only when a provision in a policy is susceptible of more than one reasonable interpretation." *Hacker v. Dickman*, 75 Ohio St.3d 118, 119-120, 661 N.E.2d 1005, 1996-Ohio-98.

**{¶24}** In the present case, under the policy issued by Hartford, an "insured" is defined, in pertinent part, as follows:

**The following are "insureds":**

**a.    You for any covered "auto".**

**b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow except. . .**

**{¶25}** As previously stated, the court must interpret the language in the insurance policy under its plain and ordinary meaning.  See *McDaniel,* 2005-Ohio-3079.  This Court has previously stated the application of this rule in the following manner:

> **\* \* \* [I]n order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language.**

*Bosserman Aviation Equip., Inc. v. U.S. Liability Ins. Co.,* 3rd Dist. No. 5-09-05, 2009-Ohio-2526, at ¶11, citing *Andersen v. Highland House Co.,* 93 Ohio St.3d 547, 549, 757 N.E.2d 329, 2001-Ohio-1607.

**{¶26}** The insurance policy in this case does not specifically define the terms "permission" or "hire." The evidence establishes that Bluffton arranged, contracted and paid for the charter of the bus and driver with Executive Coach. As part of the agreement, Bluffton specifically requested a certain bus because of its access to a working DVD player. Bluffton subsequently approved and agreed to the proposal and contract for the charter presented by Executive Coach, and eventually approved the specific driver to be assigned for each portion of the trip. From the discussions that occurred between Bluffton and Executive Coach, it

appears that Bluffton could have refused any of the proposed drivers, if they did not meet with their approval.

{¶27} Under the terms of the agreement, Bluffton Coach Grandey clearly had some authority to direct the specific activities of the bus and driver, particularly with regard to rest stops and/or meals along the way. Although it might involve an extra charge, the coach also appeared to have input as to the route, stops, or any sight-seeing detours, etc. the bus and driver might make. In fact, within the first hour of the trip, the bus was directed by Coach Grandey to return to Bluffton for the repair of the DVD player which was discovered not to be working.

{¶28} American and Federal argue that none of these considerations are determinative because within the context of an insurance contract, the terms "permission" and "hire" implicitly require a substantial, if not exclusive degree of authority and control over the bus and driver by the "permitting" or "hiring" party, which Bluffton University did not have in this case. Therefore, even though Bluffton may have had some authority and discretionary control or direction over the bus and its driver pursuant to the charter arrangement, and even though Bluffton may have "negotiated for," "consented to" or "agreed to" certain terms of the charter arrangement, the mere consent or agreement that is inherent for both parties in any contractual arrangement did not rise to the level of substantial or

exclusive authority and control over the bus and driver sufficient to constitute a grant of "permission" or the "hire" of the bus and driver by Bluffton.

{¶29} The trial court adopted the construction of American and Federal, specifically finding as follows:

> [T]his Court is persuaded by the logic that Jerome Niemeyer's employment and use of the Motor Coach was with Executive Coaches, and NOT Bluffton University's permission. The testimony of Grandey, Stechschulte and Lammers' supports the affirmation that Bluffton University's use of the motor coach and any authority Bluffton had over the motor coach driver was always subject to the permission Executive Coach gave its driver and its customer Bluffton University to use the motor coach. Additionally, Bluffton University could not make any use of the motor coach that Executive Coach did not permit Jerome Niemeyer or Bluffton University to make of the motor coach. Any asserted "authority" a customer had to grant or deny Executive Coach's driver a particular use of the company's motor coach was only that granted by Executive Coach, and therefore, it cannot be said that Bluffton, or an agent of Bluffton, such as Coach Grandey gave permission to Niemeyer to drive the bus.
>
> Executive coach at all times maintained "possession and control" of the motor coach, including at the time of the accident. Additionally Bluffton had no authority to terminate Niemeyer's use of the coach nor a financial interest in the coach. Bluffton also was exposed to no liability arising out of the use of the coach nor a right to control its use.
>
> For these reasons, this Court finds that Jerome Niemeyer was not using the Motor Coach with permission of Bluffton College, but rather with permission of an independent Contract, Executive Coach.

(internal citations omitted).

**{¶30}** While ordinary definitions and common understandings of the words "permission" and "hire" seem to include the concepts of mere "agreement," "consent" or even "acquiescence" to a matter, it is also clear that definitions of these terms in any legal context commonly refer to the requirement of having the "authority to grant the permission" and/or exert a "substantial control" over the matter or thing hired as well.

**{¶31}** For example, "permission" is often defined as follows:

> **1.     The act of permitting.     2. A license or liberty to do something: authorization. \*\*\* 3. Conduct that justifies others in believing that the possessor of property is willing to have them enter if they want to do so.**

BLACK'S LAW DICTIONARY (8th Ed.2004), at 1176 (definitions of express and implied permissions omitted). "Permission" is also defined as "the act of permitting," "formal consent," or "authorization." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002), at 1693.

**{¶32}** And, "hire" is defined as follows:

> **1.     To engage the labor or services of another for wages or other payment. 2. To procure the temporary use of property, usu. at a set price. 3. To grant the temporary use of services.**

BLACK'S LAW DICTIONARY (8th Ed.2004), at 748. "Hire" is also defined as "engaging the temporary use of something for a fixed sum." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002), at 1072.

**{¶33}** We have found no Ohio case specifically excluding the concepts of mere acquiescence or consent from the definition of "permission" or "hire" in the context of an insurance contract. Nor have we found any Ohio case specifically limiting the terms "permission" and "hire" in an insurance contract to those who have *exclusive* control or authority over the thing permitted or hired. However, there are cases in Ohio which suggest that where there is *shared control and/or direction* over a hired or borrowed vehicle the issue of which party had the more *substantial control* may be relevant as a factual matter to be weighed by the trier of fact in determining an issue of "permission" with regard to coverage in an insurance policy.

**{¶34}** Of these, we find the decision of the Tenth District Court of Appeals in *Davis v. Continental Insurance Company* (1995), 102 Ohio App.3d 82, 656 N.E.2d 1005, to be instructive to the case before us. In *Davis*, the court of appeals was asked to determine whether a borrowed vehicle was being driven with permission. In *Davis*, Davis loaned her vehicle for use during a school trip. On the way to the trip destination, and while carrying students, Davis was involved in a car accident. Davis and her passengers subsequently sought coverage under the school's auto insurance policy. The *Davis* Court was faced with a definition of "insureds" that included "anyone else while using with your permission a covered

'auto' you own, hire or borrow," a definition identical to the one in the present case. *Davis*, 102 Ohio App.3d at 86.

**{¶35}** In determining the appropriate definition of "borrow," the *Davis* Court made the following observation:

> **[T]o require that a policyholder actually have physical possession of a vehicle in order to have borrowed it is unduly restrictive. In that instance, by controlling every detail of the vehicle's use, a policyholder can in effect accomplish what physical possession would allow, but at the same time avoid the responsibility of insuring the vehicle under its policy. Indeed, the term "borrow" is next to the term "hire" in the policy. Typically, "hire" does not involve physical possession of the vehicle hired, but rather suggests remuneration for the use of it. While "borrow" differs from "hire" in that borrowing typically involves no remuneration for use of the article borrowed, we see no reason to require that "borrow" include physical possession, when "hire" does not. See *Travelers Indemn. Co. v. Swearinger* (1985), 169 Cal.App.3d 779, 214 Cal.Rptr. 383.**
>
> **Rather, we adopt the definition set forth in *Schroeder* that "borrow" means "not only that one receives the benefit of the borrowed object's use, but also that the borrower receives temporary possession, dominion, *or* control of the use of the thing." (Emphasis added.) *Schroeder, supra,* 591 So.2d at 346. As a result, "some element of substantial control is generally understood to be included within the prevailing meaning of the act of borrowing * * *." *Id.***

*Davis*, 102 Ohio App.3d at 87.

**{¶36}** In disposing of the case, the *Davis* Court determined that the issue was whether the school exercised dominion or substantial control over the car and remanded the case to the trial court to make such a determination. We believe the

*Davis* decision represents a reasonable approach to the issue before us as to whether the bus and driver were "hired" by Bluffton and acting with the "permission" of Bluffton within the meaning of the insurance contract in this case. In essence, that approach is for the trial court to evaluate the evidence as to the operational authority and control of both parties in executing the charter contract and construe the terms "permission" and "hire" in favor of the party who seems to have had the predominate authority to grant "permission" to execute the charter contract, operate the bus, or otherwise exert directional "control" over the bus and driver.

{¶37} As their approach necessarily implies a weighing of evidentiary facts, the *Davis* court in essence, determined there were genuine issues of material fact on this question and remanded the matter for the trial court to make that determination - or to at least review the existing facts according to the newly announced criteria. Ordinarily, the same course would be appropriate here.

However, we believe the trial court in this case has already conducted the comparative analysis, as recommended in *Davis*, and adopted by this court, albeit somewhat in-artfully, in the quoted portion of the court's decision set forth earlier. Specifically, in reviewing the trial court's decision, we believe it is apparent that the court considered the evidence as to the relative authority and control of both Bluffton and Executive Coach in determining whether the bus and driver were

"hired" by Bluffton or Executive Coach and whether the bus and driver were operating with the "permission" of Bluffton or Executive Coach within the context of the insurance contract. Accordingly, we do not believe it is necessary to remand this case to the trial court for that purpose.

{¶38} In essence, the trial court determined that based on a review of the record in this case, reasonable minds could not differ in finding that the operation of the bus and driver was neither "hired" by Bluffton, nor with the "permission" of Bluffton within the meaning of those terms in the insurance contract. The trial court's decision reflects that this determination was based on the trial court's assessment that Executive Coach and not Bluffton, had predominate authority and control over the bus and driver under the charter contract.

{¶39} Following the approach set forth in *Davis*, our independent review of the record in this case leads us to concur with the decision of the trial court. In sum, we have determined that reasonable minds could not differ in concluding that Executive Coach and not Bluffton had predominate authority and control over the bus and driver under the charter contract in this case and that as a result, reasonable minds could not differ in concluding that the bus and driver were "hired" by Executive Coach and not Bluffton, and were operating with the "permission" of Executive Coach and not Bluffton within the meaning of those

terms as used in the insurance contract. For these reasons, the first and second assignments of error are overruled.

**{¶40}** In their third assignment of error, Intervenors argue that the trial court erred in quashing the subpoena seeking Hartford's underwriting file and claims file.

**{¶41}** A trial court has broad discretion to regulate discovery proceedings. *Hahn v. Satullo*, 156 Ohio App.3d 412, 431, 806 N.E.2d 567, 2004-Ohio-1057, citing *Van-Am. Ins. Co. v. Schiappa* (1999), 132 Ohio App.3d 325, 330, 724 N.E.2d 1232. Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. *Van-Am. Ins. Co.*, 132 Ohio App.3d at 330. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

**{¶42}** In its December 1, 2008, order quashing Betts' subpoena, the trial court found as follows:

> **The Court would note that this is a Declaratory judgment Action concerning the interpretation of the specific language contained in contract(s) of insurance. Further it is noted that this is not what is contained in an underwriting file.**

> **The Court would further note that Hartford is not a party to the Declaratory Judgment Action and Betts is a non-insured under the Hartford Policy.**
>
> **It is elementary and provided by Ohio Civil Rule 26(B) that "parties may obtain discovery regarding any matter, not privileged, <u>which is relevant</u> to the subject matter involved in the pending action."**
>
> **Further, the Court finds that the attorney-client privilege and work product doctrine protect Hartford's claims file from the subpoena issued by Betts.**

{¶43} In the present case, we are mindful that the action commenced is a declaratory judgment action, in which the parties are requesting that the trial court interpret the contract. As previously stated, a court must interpret the language in the insurance policy under its plain and ordinary meaning. *McDaniel,* 2005-Ohio-3079, at ¶32, citing *Wilson,* 2005-Ohio-337, at ¶ 9. When the contract is clear and unambiguous, the court "may look no further than the four corners of the insurance policy to find the intent of the parties." *Id.* An ambiguity exists "only when a provision in a policy is susceptible of more than one reasonable interpretation." *Hacker*, 75 Ohio St.3d at 119-120.

{¶44} In the present case, it has not been demonstrated thus far that the underwriting and claims file were relevant to the issues in the present action. Accordingly, we find that the trial court did not abuse its discretion when it quashed the Invervenors' subpoena of Hartford's underwriting file and its claims file. Intervenors' third assignment of error is overruled.

{¶45} Based on the foregoing, the February 25, 2009 Judgment of the Court of Common Pleas, Allen County, Ohio, granting summary judgment in favor of Plaintiffs-Appellees Federal and American, and denying the Intervenors' motion for summary judgment is affirmed. The December 1, 2008 order of the trial court quashing Intervenors' subpoenas is also affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**