[Civ. No. 23094. Third Dist. May 28, 1985.]

TRAVELERS INDEMNITY COMPANY, Plaintiff and Respondent, v. SONIA SWEARINGER et al., Defendants and Appellants.

**COUNSEL**

John M. Burlake and Helen O. Page for Defendants and Appellants.

Weintraub, Genshlea, Hardy, Erich & Brown and Lucinda C. Pocan for Plaintiff and Respondent.

## OPINION

**BLEASE, J.**—The Travelers Indemnity Company (Travelers) issued its "new easy-read type" liability insurance policy to Fall River Joint Unified School District (Fall River). In this action it seeks a declaration concerning the application of the policy to an automobile accident in which the driver, Tonya Gallion, was a Fall River student and a Sonia Swearinger, a passenger who was injured, a visiting student. Travelers admits an obligation to defend and indemnify Fall River but claims that neither Tonya nor her father (who owned the auto) are insureds. Travelers named as defendants Sonia Swearinger, Sonia's parents, Sonia's school district (Princeton Joint Unified School District), Tonya Gallion, her father and another passenger.

Travelers obtained a summary judgment against all defendants. It recites: "there is no liability coverage nor any other coverage available under the policy of THE TRAVELERS INDEMNITY COMPANY herein which is Policy No. 650-226A636-A-IND-80 and . . . plaintiff herein has no obligation to investigate the facts concerning or to defend or indemnify defendants TONYA ANN GALLION, RUDY GALLION, or any other defendants against the claims arising because of the [subject automobile accident]."

Sonia and her parents appeal. We will reverse the judgment.

### INTRODUCTION

This is a related case to *Swearinger* v. *Fall River Joint Unified School Dist.* *(Cal.App.). In that action Sonia Swearinger and her parents sued the other defendants to this action and Fall River for injuries caused by the automobile accident. We held that the personal injury action against Fall River was not absolutely barred by sections 35330 and 44808 of the Education Code and remanded the case for trial. This coverage dispute is fueled by the possibility that the policy may indemnify Tonya Gallion for the accident if she is found negligent notwithstanding that Fall River is found not liable.

### FACTS

#### *The Accident*

The facts are contained in the summary judgment papers. Sonia and another visiting student were assisting their school basketball team by keeping

---

*Reporter's Note: Review granted, July 18, 1985 (S.F. 24908). Cause dismissed, November 1, 1985.

statistics. The tournament extended for several days and the visiting participants were lodged with families of Fall River students who volunteered to do so. The host families would provide meals, sleeping quarters, bathing facilities and transportation to and from the school. The only tangible reward for serving as a host family was free tickets for the parents to the first night of the tournament. Some proceeds from the tournament ticket sales were returned to the school and used to defray expenses of the athletic programs.

The driver of the automobile in which the accident occurred was Tonya Gallion, a Fall River student. The Gallion family had served as hosts "every year" in the past. It was "understood" that when a host family provided hospitality they would also provide the transportation to their home. Families without cars "wouldn't be a host because they couldn't get them in or out." In past years the Gallion parents had always driven during transportation of the guests. The school "encouraged" that transporting chores be performed by the host family parents. Bus transportation of the visiting students would have been "very expensive."

The relations between Fall River and the host families were not elaborate. The prospective hosts were screened by school personnel and if the family was acceptable little explicit direction was provided concerning accomplishment of the hosting chores. Host students were told not to take the guests out partying, dancing, or drinking. If problems arose with host families, the guests were removed and a new host provided. In past years host family status had been terminated and the host family stricken from the rolls when drinking problems had come to the attention of the school officials and once when a student assumed host responsibilities at a time when his parents were not in attendance at the home.

### The Insurance Policy

The material portions of the Travelers' policy are contained in its automobile accident provisions. The policy insures for general liability for bodily injury or property damage but excepts bodily injury arising out of the ownership, maintenance, operation, or use of an automobile. Thus the automobile accident provisions of the policy govern this case. The pertinent ones follow.

The policy provides that Travelers "will pay all sums the *insured* legally must pay as damages because of *bodily injury* or *property damage* to which [the policy] applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto.*"

The policy defines nine classes of covered autos of which one, "any auto," is made applicable by the endorsements. The Gallion automobile, being such, is a covered auto. That is material to the definition of "insured," which reads:

"D. WHO IS INSURED.

"1. *You* [i.e. Fall River] are an *insured* for any covered *auto*.

"2. Anyone else is an *insured* while using with *your* permission a covered *auto you* own, hire or borrow except:

"a. The owner of a covered *auto you* hire or borrow from one of *your* employees or a member of his or her household.

"b. Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing or parking *autos* unless that business is *yours*.

"c. Anyone other than *your* employees, a lessee or borrower or any of their employees, while moving property to or from a covered *auto*.

"3. Anyone liable for the conduct of an *insured* described above is an *insured* but only to the extent of that liability. However, the owner or anyone else from whom *you* hire or borrow a covered *auto* is an *insured* only if that *auto* is a *trailer* connected to a covered *auto you* own."

## DISCUSSION

The Travelers' policy provides that it "will pay all sums the *insured* legally must pay as damages because of *bodily injury* or *property damage* to which [the policy] applies, caused by an *accident* and resulting from the ownership, maintenance or used of a covered *auto*." Since "covered auto" means any auto the dispositive issue is whether Tonya Gallion is an insured.

The policy defines "insured" (other than the named insured) as "[a]nyone . . . while using with *your* [i.e. Fall River] permission[1] a covered *auto you* own, hire or borrow . . . ." Tonya Gallion comes within this provision if the Gallion automobile was borrowed by Fall River from the Gallions for

---

[1]The parties tender no issue whether Tonya Gallion had permission from Fall River to use the Gallion vehicle on Fall River's mission independent of the issue of borrowing. Ordinarily the issue of borrowing subsumes the issue of permission. (Compare *Fratis* v. *Fireman's Fund American Ins. Companies* (1976) 56 Cal.App.3d 339, 343 [128 Cal.Rptr. 391].)

its use in the ferrying of visiting students to and from Fall River High School.

The parties advance differing meanings of "borrow." The Swearingers focus on the vehicle's use in service of Fall River. They claim that "borrow" encompasses the use of a third party's vehicle by the third party in the service of the borrower. Travelers focuses on the dominion and control of the vehicle and implies that one cannot borrow another's vehicle unless the lender gives up the physical possession of the vehicle. Thus, Travelers argues that the Swearingers' definition is unreasonable.

That tenders a question for resolution by the court. ■ "It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) ■ We are directed to read insurance contracts so "that any uncertainties . . ., whether as to peril insured against, the amount of liability, or the person or persons insured, will be resolved against the insurer and in favor of imposing liability." (*Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) This is a rule by which at one and the same time we recognize and resolve a claimed ambiguity in the application of contract language.[2]

■ Absent an audience of technical language users, "[t]he policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129]; citations omitted.) We must read it as employing the ordinary usages of its terms as they might be understood by the layman in the context of the policy and the purposes which it serves.

"[B]orrow" is not explicitly defined in the Travelers' policy. But the context in which the term is used does shed grammatical light on its meaning. "Borrow" appears both in the definition of "insured" and in an exception thereto. ■ The definition, as we have seen, makes an insured out of any person using, with Fall River's permission, a covered auto which has been borrowed by Fall River. The exception excludes from this definition the owner of an auto "borrowed [by Fall River] from one of [Fall

---

[2]A Gresham's Law of meaning might be said to derive from this rule; broad meanings of terms of coverage drive out narrow ones when both are reasonable in the context of an insurance policy. (Cf. "vulgarization" in Fowler, Modern English Usage (2d ed. 1965) pp. 684-685.)

River's] employees . . . ."[3] We get from this example a paradigmatic usage of "borrow" which informs us (by the elementary principle of consistent usage) of its meaning wherever it is used in the policy. We explore the semantic consequences of this usage. Fall River, as an entity, can operate only through individuals, including (quite likely) its employees. Thus, the exception implicitly recognizes a case in which the employee may act in a dual role, as a representative of Fall River and as owner of the vehicle. This implies that a borrowing can occur if Fall River permits the employee's use of his or her vehicle on its errand. If that is so, Fall River can borrow a vehicle whenever it properly gains the use of a third party's vehicle for its purposes whatever may be said of the employee's dominion over the vehicle (by ownership) or physical possession of it (by driving it).

This conclusion gains support from usages of "borrow" to which the layman is privy. The Oxford English Dictionary (1933) (O.E.D.) defines "borrow" as "[t]o take (a thing) on pledge or security given for its safe return" and as "[t]o render oneself indebted for; to make temporary use of (something not one's own) . . . ." (1 O.E.D. p. 1006.) The first of these definitions emphasizes the possession of the thing and is linked to the law of bailment which concerns, e.g., the risk of loss, degree of care, and permissible uses of the *chattel*. (Cf. Civ. Code, §§ 1884-1896.) These matters are not at issue in the Travelers' policy because it is not the chattel as such which is its concern. Rather it is the injurious consequences of the use of the vehicle which it is the purpose of the policy to indemnify. That invokes the second shade of meaning of the O.E.D., to make temporary use of something not one's own.

The meaning of "borrow" can be come at from yet another direction. In the Travelers' definition of insured the terms "borrow" and "hire" are juxtaposed. That is so, we think, because they have a natural affinity. Borrow has a venerable usage in which it is distinguished from hire only by the absence of remuneration. (See 2 Blackstone's Commentaries 453.) "Hire" is used in a sense which excludes physical possession altogether when remuneration is involved. We say, for example, that one hires a taxicab, even though the taxicab owner drives it. This usage is found in insurance policies.

---

[3]The exception does not apply to Tonya Gallion because she is apparently not the owner of the auto. Nor would it apply unless Tonya Gallion is an employee of Fall River, a matter at issue in the principal litigation. Mr. Gallion is excepted in any event because of another policy provision which excludes all owners from coverage. We note that if a school district were not to insure against the liability of its employees it would run afoul of Education Code section 35208, subdivision (a)(2) which requires that a school district insure against the "personal liability of the . . . employees of the district for damages for death or injury to a person, or damage or loss of property caused by the negligent act or omission of the . . . employee when acting within the scope of his . . . employment." We are not called upon to consider the consequences of such a violation.

A "hired automobile" is there defined as one used under contract in behalf of, or loaned to, the named insured. (See, e.g., *Fratis* v. *Fireman's Fund American Ins. Companies, supra,* 56 Cal.App.3d at p. 342; *Monolith Portland Cement Co.* v. *American Home Assur. Co.* (1969) 273 Cal.App.2d 115, 118 [78 Cal.Rptr. 113]; Annot., When is Automobile "Used Under Contract in Behalf of, or Loaned to," Insured, Within Meaning of "Hired Automobile" Provision of Automobile Insurance Policy (1981) 5 A.L.R.4th 636.) We note that the Travelers' policy uses "to hire," albeit for the limited purpose of exclusion from general liability, as encompassing any contract to furnish transportation to students.

In *Fratis* this court held that an automobile owned by an independent contractor and used by him to solicit newspaper subscriptions for a newspaper company in return for a mileage allowance was a "hired automobile" within the meaning of the newspaper's insurance policy. (*Id.,* 56 Cal.App.3d at pp. 342, 343.) Travelers ignores *Fratis.* It argues that "borrow" does not apply here because Fall River never had dominion and control of the Gallion vehicle because it never had possession or custody of it. This argument is founded upon a question-begging view of dominion and control which, as we have shown, is inconsistent with the implications of the contract's use of "borrow." To support it Travelers relies upon *Monolith,* a case that is not helpful to Travelers' claim.

In *Monolith, supra,* 273 Cal.App.2d 115, a cement manufacturer contracted with a truck owner to haul concrete to its consignee. The truck driver was injured when the manufacturer's employees negligently loaded the truck. A coverage dispute arose. The manufacturer's policy provided coverage to any person using a hired automobile with the permission of the named insured. The term "hired automobile" was defined as "an automobile used under contract in behalf of, or loaned to, the named insured." (*Id.,* at pp. 116-118.) The court held that the cement truck was a "hired automobile" under the dominion and control of the cement manufacturer because it was "loaned" to the manufacturer for purposes of shipping cement. (*Id.,* at pp. 121-122.)[4] This supports the Swearingers' position. If a manufacturer is "loaned," i.e., "borrows," another's truck when it contracts for the service of drayage then a school district "borrows" an automobile when it secures the transportation of a guest pupil by the family of

---

[4]*Monolith* distinguished *Governmental Employees Ins. Co.* v. *St. Paul Fire etc. Ins. Co.* (1966) 243 Cal.App.2d 186 [52 Cal.Rptr. 317] and *Continental Cas. Co.* v. *Hartford Acc. & Indem. Co.* (1963) 213 Cal.App.2d 78 [28 Cal.Rptr. 606] upon which Travelers also relies. The basis for the distinction was that in those cases there was no contractual relationship between the named insured and the owner of the vehicle involved in the accident, a circumstance deemed essential under the "hired automobile" definitions in issue. (*Monolith, supra,* fn. 2 at p. 122.)

one of its students. That was the conclusion drawn in *Caston* v. *Buckeye Union Insurance Company* (1982) 8 Ohio App.3d 309 [456 N.E.2d 1270]. It held that in the case where a family car was used during a school's field trip and a student was injured in an accident involving the car, the school's insurance covers the vehicle when the policy states that coverage is provided to a "hired automobile" and the policy defines "hired automobile" as one which is "loaned" to the named insured. (Cf. *Continental Cas. Co.* v. *Zurich Ins. Co.*, *supra*, 57 Cal.2d at pp. 32-33.)

Travelers also relies on *Indemnity Ins. Co.* v. *Pacific Clay Products Co.* (1970) 13 Cal.App.3d 304 [91 Cal.Rptr. 452]. There a pipe merchant contracted to deliver and unload pipe it sold to a construction contractor. During a delivery the merchant's truck driver and his helper were injured when a crane operated by the contractor and used to unload the truck touched a high voltage power line at a location to which they had been directed by the contractor. (*Id.*, at pp. 308-309.) The contractor's policy limited hired automobile coverage to automobiles " 'used under [written] contract in behalf of, or loaned to, the named insured.' " (*Id.*, at p. 313.) The court held that the truck was not loaned to the contractor because its degree of control over it, while sufficient to show "use," "did not involve [its] control [or] its possession or custody." The court noted that the truck operator was not the contractor's employee. (*Id.*, at p. 314.)

The only analysis advanced in the case is that "[a] loan of property creates the relationship of lender and borrower; involves a grant by the lender of the custody and use of the property loaned to the borrower on condition the property be returned; and does not arise from an exercise of control pursuant to a right of control." (*Pacific Clay Products*, *supra*, 13 Cal.App.3d at p. 314; citation omitted.) We do not find this formulation persuasive. Only *Monolith*, *supra*, 273 Cal.App.2d 115 is cited in support of this formulation, and its holding is contrary to the proposition for which it is the sole support.

The remaining California case tendered by Travelers is *Home Indemnity Co.* v. *King* (1983) 34 Cal.3d 803 [195 Cal.Rptr. 686, 670 P.2d 340]. In that case King was the driver of a tractor/trailer sent to pick up cargo at a depot. King hired Martin, an independent forklift owner/operator, to load the cargo into the trailer. Martin injured King while loading and sought indemnity as an insured "borrower" of the truck from the insurer of the tractor rig (the trailer was separately owned and insured). (*Id.*, at pp. 806-807.) The Supreme Court held that Martin had not borrowed the tractor because there was no evidence he moved it or had express or implied authority to do so. (*Id.*, at pp. 813-814.) Martin made no use of the tractor

nor was such use part of his agreement with King. By contrast Fall River did use the Gallion automobile for its purpose in transporting guest students.

It is unnecessary to discuss the out-of-state precedents proffered by Travelers. They lie within the scope of our analysis. The trial court erred in holding that Tonya Gallion could not be, on the facts tendered, an insured under the Travelers' policy. In view of that conclusion none of the remaining arguments of the parties need be addressed.

The judgment is reversed.

Sparks, J., concurred.

Regan, Acting P. J., concurred in the result.