**Thomas L. ANDRESEN, Appellee,**

v.

**EMPLOYERS MUTUAL CASUALTY CO., Appellant.**

**No. 89–1251.**

Supreme Court of Iowa.

Sept. 19, 1990.

Constance A. Schriver and Thomas D. Waterman of Lane & Waterman, Davenport, for appellant.

John J. Carlin of Carlin, Hellstrom & Bittner, Davenport, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

McGIVERIN, Chief Justice.

Plaintiff Thomas L. Andresen was employed by First Bank of Davenport, Iowa. He was injured in a two-car collision while driving his own automobile in the course of his employment. The other driver was at fault and, as it turned out, underinsured. Defendant Employers Mutual Casualty Company (Employers) insures First Bank under a commercial auto policy which includes underinsured motorist coverage.

Andresen brought this action in equity for a declaratory judgment as to whether he can recover for his injuries from Employers under the underinsured motorist coverage of the commercial auto policy issued to First Bank.

The case was decided in the district court on the parties' cross motions for summary judgment. The court ruled that under the terms of the policy, Andresen is entitled to recover. Andresen's motion for summary judgment was granted; Employers' motion for summary judgment was denied.

We agree with the district court and, therefore, affirm its judgment.

I. *Background facts and proceedings.* The pleadings and affidavits filed show the following undisputed facts. In February 1988, Andresen was employed by First Bank. One of his duties was to shovel snow at 1411 Bridge Avenue, Davenport, a property which was the subject of a foreclosure action by First Bank. The bank ordinarily furnished Andresen one of its automobiles as a means of getting to the property. On February 10, however, First Bank's automobiles were not available and Andresen was directed to use his own automobile. The agreement was that whenever Andresen used his own car on bank busi-

ness, the bank would pay him a certain amount per mile driven.

While performing bank duties with his own automobile, Andresen was seriously injured when another car collided with his car. The other driver was at fault.

Andresen was paid workers' compensation benefits by the bank's insurance carrier. He also recovered the liability limit of the other driver's automobile insurance policy, subject to the subrogation rights of the bank's workers' compensation insurer. In addition, he recovered the limit of his own automobile insurance policy under its underinsured motorist coverage. Andresen then sought to recover from Employers under the underinsured motorist coverage afforded by the commercial auto policy issued to First Bank as named insured.

The underinsured motorist endorsement[1] attached to First Bank's policy makes "[A]nyone ... 'occupying' a covered 'auto'" an insured under the underinsured motorist coverage.

The policy jacket describes nine classes of "covered autos" and explains that where the number of a class appears on the declarations page next to a type of coverage, autos of that class are the only covered autos under that coverage. Among the delineated classes of covered autos are the following:

2 = OWNED "AUTOS" ONLY. Only those autos you [the named insured] own....

*     *     *     *     *     *

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their

households but only while used in your business or your personal affairs.

Next to the uninsured motorist coverage space on the declarations page, only "2" appears. Thus, the declarations page, policy jacket, and underinsured motorist endorsement would extend underinsured motorist coverage only to anyone occupying an auto owned by the bank. Andresen's auto, of course, was not owned by the bank.

The declarations page, however, specifically notes that First Bank's policy includes an endorsement entitled "Hired Autos Specified as Covered Autos You Own" (the hired autos endorsement). That endorsement provides, in relevant part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN.**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM.

*     *     *     *     *     *

SCHEDULE

Description of Auto:

ALL AUTOS HIRED OR BORROWED BY THE NAMED INSURED

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. Any "auto" described in the Schedule will be considered a covered "auto" you own and [not a] covered "auto" you hire, borrow or lease under the coverage for which it is a covered "auto."

Andresen demanded payment under this endorsement as the driver of an auto "hired or borrowed" by First Bank. When Employers refused his demand, Andresen filed this equity action for a declaration of his rights under the policy.

1. The underinsured motorist endorsement in First Bank's policy actually is part of a broader endorsement entitled "Iowa Uninsured and Underinsured Motorists Coverage." For the

sake of simplicity, we will refer to this endorsement as the underinsured motorist endorsement.

Both parties filed motions for summary judgment. Iowa R.Civ.P. 237. Finding no genuine issue as to any material fact, the district court agreed that summary judgment was appropriate. The court ruled that Andresen's automobile was a borrowed auto under the hired auto endorsement. Furthermore, the court ruled that Andresen's auto was a covered auto. Andresen's motion for summary judgment was granted; Employers' motion for summary judgment was denied.

Employers appealed. Employers argues that Andresen's auto was not a borrowed auto under the policy issued to First Bank, and, even if it was a borrowed auto, the auto was not a covered auto because it was borrowed from an employee of First Bank.

■ II. *Was Andresen's auto a borrowed auto?* The underlying facts of the case are undisputed, as are the terms of the written insurance contract. The only dispute is over the legal significance of those terms. Under these circumstances, summary judgment is appropriate. *See, e.g., Moritz v. Farm Bureau Mut. Ins. Co.,* 434 N.W.2d 624, 626 (Iowa 1989); *Connie's Const. Co., Inc. v. Fireman's Fund Ins. Co.,* 227 N.W.2d 207, 210 (Iowa 1975).

The hired autos endorsement provides that "all autos hired or borrowed by [First Bank]" will be considered covered autos owned by First Bank under the coverage for which the autos are covered autos. Andresen contends that his auto was borrowed by First Bank when the bank directed or asked him to use the car to get to the foreclosure property in the course of his employment. If that is correct, Andresen would be insured under the underinsured motorist coverage unless excluded elsewhere in the policy.

■ The term "borrow" is not defined in the policy. That being the case, we give the word its ordinary meaning. *Connie's Const.,* 227 N.W.2d at 210.

Not surprisingly, the parties advance different ordinary meanings of "borrow." Andresen focuses on the fact that his auto was used in the service of First Bank as a substitute for the bank's own vehicles.

Employers focuses on the fact that the auto never left Andresen's possession. Andresen counters by pointing out that he was acting in his capacity as a bank employee when the accident occurred. The dictionary lends some support to each side, defining "borrow" as a verb meaning:

> to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender: obtain the temporary use of.

*Webster's Third New International Dictionary of the English Language* 256 (unabridged 1976). As this definition implies, the word "loan" is the correlative of "borrow." *See id.; see also Black's Law Dictionary* 167 (5th ed. 1979).

Legal precedent lends some support to each side as well. Employers cites cases like *Trinity Universal Insurance Co. v. Cincinnati Insurance Co.,* 513 F.2d 915 (6th Cir.1975). In *Trinity,* the court held that a corporate officer using her own car on corporate business had not "loaned" her car to the corporation, as that term was used in an insurance policy exclusionary clause. *Id.* at 920. *See also United States Fidelity & Guar. Co. v. Perry,* 361 So.2d 594 (Ala.Civ.App.1978) (employee using his own car on employer's business had not "loaned" car to employer; coverage denied) (citing *Trinity*); *cf. Juve v. Home Indemnity Co.,* 301 N.W.2d 554 (Minn.1981) (volunteer fireman driving his own car to fire station in response to alarm had not "loaned" car to city) (citing *Perry*); *Liberty Mut. Ins. Co. v. American Employers Ins. Co.,* 556 S.W.2d 242 (Tex.1977) (one who unloads truck is not "borrower" of the truck under loading and unloading endorsement to auto policy; "borrower" has both use and possession).

Andresen, on the other hand, cites cases like *Travelers Indemnity Co. v. Swearinger,* 169 Cal.App.3d 779, 214 Cal.Rptr. 383 (1985), and *Caston v. Buckeye Union Insurance Co.,* 8 Ohio App.3d 309, 456 N.E.2d 1270 (1982). The court in *Swearinger* held that a school district had "borrowed" a family's car when the district secured transportation for a guest pupil by

the family, even though one of the family was driving the car at all times. *Swearinger*, 169 Cal.App.3d at 785, 214 Cal.Rptr. at 387. Similarly in *Caston*, the plaintiff student went on a class field trip. *Caston*, 8 Ohio App.3d at 310, 456 N.E.2d at 1271. Because the school district's buses were not available, the district arranged for certain students to transport the other students in family cars. *Id.* The plaintiff was injured in an accident that occurred while he was riding in a fellow student's family car. *Id.* Because the vehicle was used as a substitute for the district's buses and was put at the district's disposal, the court held that the car had been "loaned" to the district, even though no one but the plaintiff's fellow student had driven the car. *Id.* at 311, 456 N.E.2d at 1272.

█ The latter two cases are more persuasive than the former ones. In our view, a vehicle is borrowed when someone other than the owner temporarily gains its use. First Bank temporarily gained the use of Andresen's vehicle as a substitute for its own vehicles, regardless of the fact that Andresen himself—as a bank employee—drove the car on the bank's business. This arrangement falls within the ordinary meaning of the term "borrow."

Absent policy definition, a term will be given the meaning most favorable to the insured, consistent with its use in ordinary speech. We hold that Andresen's auto was a borrowed auto within the meaning of the hired auto endorsement.

█ III. *Is the auto borrowed from Andresen a covered auto?* The hired auto endorsement provides that "all autos hired or borrowed" will be considered "covered 'auto[s]' you [the named insured] own ... under the coverage for which [they are] covered 'auto[s]'." On appeal, Employers does not argue that the hired auto endorsement does not affect the underinsured motorist coverage. Employers does argue, however, that even if Andresen's auto is otherwise a borrowed auto, it is not a covered auto because autos First Bank borrows from its employees are expressly excluded from coverage in another part of the policy.

Employers' argument on this point is rooted in that part of the policy jacket which describes the nine classes of covered autos. As noted previously, two of those classes are:

> 8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. *This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.*
>
> 9 = NONOWNED AUTOS ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

(Emphasis added.) The policy jacket states that where the number of a class appears on the declarations page next to a type of coverage, autos of that class are the only covered autos under that coverage. Employers argues that because Andresen's auto would not be covered under class 8 "hired autos only" coverage, and because class 9 "non-owned autos only" coverage was not purchased, Andresen's auto is not covered under the hired auto endorsement. In other words, Employers contends that the hired auto endorsement only extends coverage to class 8 autos.

The short answer to this argument is that First Bank did not purchase insurance for class 8 "hired autos only," which would have excluded autos borrowed from employees, or insurance for class 9 "non-owned autos only," which according to Employers would have included Andresen's auto. Rather by way of endorsement, First Bank purchased insurance for *"all autos hired or borrowed"* without limitation. Had the parties intended to make the contract Employers now argues that they made, there would have been no need for the hired auto endorsement. Instead, an "8" would have been typed next to the uninsured motorist coverage space on the declarations page.

We conclude that the auto First Bank borrowed from Andresen was a covered auto under the policy.

IV. *Disposition.* The district court correctly ruled that First Bank borrowed Andresen's auto and that Andresen's auto was a covered auto under the bank's underinsured motorist coverage. The judgment of the district court is affirmed.

AFFIRMED.