NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0333n.06

No. 15-6187

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 13, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) ) |  |
| Plaintiff-Appellee, | ) ) |  |
| v. | ) ) |  |
| DAVIDA A. SULLIVAN; CURTIS SULLIVAN; SHARON SULLIVAN; and OMNI CUSTOM MEATS, INC. | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| Defendant-Appellants, | ) ) |  |
| and | ) ) |  |
| JAMES BLAKE, | ) ) |  |
| Intervenor-Appellant. | ) |  |

**BEFORE: WHITE and STRANCH, Circuit Judges; and MICHELSON, District Judge.**[*]

**MICHELSON, District Judge.** This insurance dispute arose from a 2011 automobile accident involving Davida Sullivan and James Blake. Davida collided with Blake's vehicle while driving a 1999 Mercedes listed on an insurance policy that Selective Insurance Company of South Carolina had issued Omni Custom Meats, Inc. The question presented in this appeal is whether the named insured, Omni, "borrow[ed]" the Mercedes from its owners, Curtis and Sharon Sullivan (Davida's parents), as that term is used in the policy. We hold that Omni did not.

---

[*] The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

Nor does the reasonable expectations doctrine require Selective to provide coverage. Therefore, the district court's opinion will be affirmed.

**I.**

James Blake sustained injuries in an automobile accident on May 9, 2011. Davida Sullivan was driving a 1999 C230 Mercedes in Los Angeles, California when she made a sudden left turn to enter a shopping center parking lot and collided with Blake's vehicle. The crash site investigator determined that Davida caused the accident by "making an unsafe left turn[.]" (R. 69-7, PID 894.)

Davida's parents, Curtis and Sharon Sullivan, owned the Mercedes. In 2007, they allowed their Kentucky meatpacking company, Omni Custom Meats, Inc. to use the Mercedes for "business purposes." (R. 69-11, PID 917.)

Davida began working for Omni in 2001. She performed mostly "back office" work from her home in California. She earned a salary and benefits, and, starting in 2009, was given permission by Omni to use the Mercedes.

In January 2011, Omni "[ran] out of work" for Davida, and she stopped working for the company. (R. 69-11, PID 915.) Omni provided a severance package, which, according to Curtis's deposition testimony, included health insurance, dental insurance, auto insurance, and permission to keep using the Mercedes.

Between January and May 2011, Davida started a jewelry and clothing business in California. Even so, Davida was driving the Mercedes with Omni's permission on the date of the accident.

Selective issued the relevant policy to Omni on June 27, 2007. The Policy provided certain Commercial General Liability, Business Automobile, and Commercial Umbrella Liability

coverages. The Business Automobile Policy provides, "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (R. 69-2, PID 844.) The Commercial Umbrella Liability Policy provides, "We will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (R. 69-2, PID 855.) The Business Auto and Commercial Umbrella Liability coverages provide identical definitions of "Who Is An Insured."[1] (R. 69-2, PID 852, 855.) Critical to this appeal, both state, "The following are 'insureds': a. You for any covered 'auto'. b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ." (R. 69-2, PID 843, 863.) It is undisputed that the "you" refers to Omni.

It is equally undisputed that the Policy did not expressly name Davida as an insured. Omni's initial application requested coverage for two drivers, Curtis and Sharon Sullivan, and four vehicles, none of which were the Mercedes. On June 28, 2007, the Mercedes was added to the Policy by endorsement. The endorsement did not list any additional drivers, nor did it list a garage location for the vehicle. On May 12, 2008, Selective requested an updated drivers list as part of the policy renewal. But no one advised Selective that Davida would be driving the Mercedes in California, or that Davida had a DUI infraction on her driving record. Nonetheless, Blake asserts that Davida is an insured under Omni's insurance policy because Omni "borrow[ed]" the Mercedes from Curtis and Sharon and Davida used the car with Omni's "permission."

---

[1] The district court found, and the parties do not dispute on appeal, that the Commercial General Liability Policy did not provide coverage. (R. 72, PID 1006.)

In March 2012, Blake filed suit in California against Omni, Curtis and Sharon Sullivan, and Davida Sullivan. Selective agreed to provide a defense to Omni and the Sullivans in the California action, subject to a reservation of rights pending an investigation. In March 2015, Omni, Curtis, and Sharon were dismissed from the California action with prejudice, leaving Davida as the only defendant. Blake purports to be the assignee of any of Davida's rights as an "insured" under the Policy.

Meanwhile, in October 2012, having determined that the accident was not covered under the terms of Omni's policy, Selective filed a complaint in the United States District Court for the Western District of Kentucky, seeking a declaratory judgment of its rights and duties with respect to the California action. The district court ultimately found that Davida Sullivan was not an "insured" within the meaning of the Policy at the time of the accident and therefore, Selective had no duty to provide coverage.

This appeal followed.

## II.

"We review *de novo* the district court's decision to grant a motion for declaratory judgment." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). "In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state," here Kentucky. *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).

## III.

### A.

"In applying Kentucky law we must follow the decisions of the state's highest court when that court has addressed the relevant issue. When the issue has not been directly addressed, we must anticipate how the relevant state's highest court would rule in the case and are bound by

controlling decisions of that court." *Scottsdale Ins. Co.*, 513 F.3d at 563 (citations and internal quotation marks omitted). In Kentucky, "the construction and legal effect of an insurance contract is [generally] a matter of law for the court." *Coleman v. Bee Line Courier Serv., Inc.*, 284 S.W.3d 123, 125 (Ky. 2009) (quoting *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007)). The Kentucky Supreme Court recently held,

> Any ambiguities in an insurance contract must be resolved in favor of the insured, but this rule of strict construction certainly does not mean that every doubt must be resolved against the insurer and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the plain meaning in the contract.

*Tower Ins. Co. of New York v. Horn*, 472 S.W.3d 172, 174 (Ky. 2015) (citing *Ky. Ass'n of Ctys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005)).

Under the Policy, coverage is available for "all sums an 'insured' legally must pay as damages . . . caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (R. 69-2, PID 843.) To resolve the issue of coverage, we must decide whether Davida was an "insured" under the Policy. An "insured" includes "Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ." (R. 69-2, PID 843.) Again, "you" and "your" refers to Omni, the named insured. It is not disputed that the Mercedes was "covered" or that Davida used it with Omni's "permission." The only issue before us is whether Omni "borrow[ed]" the Mercedes from Curtis and Sharon Sullivan at the time of the accident.

The Policy does not define the term "borrow." Nor does Kentucky case law—at least in the context of an automobile insurance policy. Blake urges several meanings of the term. We need not decide which, if any, is the proper definition of "borrow" because Omni meets none of them.

First, Blake urges that we adopt a dictionary definition of "borrow." To be sure, dictionaries can be helpful aids in ascribing definitions to contract terms that are not defined by the contract. *See Auto-Owners Ins. Co. v. Veterans of Foreign Wars Post 5906*, 276 S.W.3d 298, 301 (Ky. Ct. App. 2009). But none of the dictionary definitions we have reviewed help Blake. Black's Law Dictionary defines "borrow" as "To take something for temporary use." Black's Law Dictionary (10th ed. 2014). And Merriam-Webster says "borrow" means "to receive with the implied or expressed intention of returning the same or an equivalent." Merriam-Webster Online Dictionary, http://www.merriam-webster.com (12 June 2017). But nothing indicates that Omni's use of the Mercedes was temporary, or that Omni received the Mercedes with the implied or expressed intention of returning it. Rather, Curtis's testimony suggests that Davida's severance package, and thus, Omni's use of the Mercedes for that purpose, had no set end date: Omni "gave permission for Davida to drive the vehicle [the Mercedes] after she left employment with the company" and did not mention any set end date for that permission. (R. 69-11, PID 915.)

Blake directs us to adopt a definition of "borrow" from the cases we considered in *Westfield Insurance Co. v. Young*, No. 12-6523, slip op. (6th Cir. Sept. 9, 2013). That case also involved a Kentucky business auto insurance policy purporting to provide coverage for "[a]nyone else while using with [the named insured's] permission a covered 'auto' [the named insured] own[s], hire[s], or borrow[s]." *Id.* at 3. There a community college had a program in which students could participate in live classroom vehicle repair projects. *Id.* at 2–3. A student's employer allowed the college to use his inoperative truck for one of these projects. *Id.* at 2. After the repair was completed, the student was tasked with returning the vehicle. *Id.* While en route to a planned stop at his girlfriend's house, the student collided with another vehicle, ultimately

causing the death of the other driver. *Id.* The decedent's family sought damages under the college's insurance policy. *Id.* As here, "the dispositive issue regarding coverage . . . [was] whether the College 'borrowed' [the third party's] truck." *Id.* at 3.

We first considered *Travelers Indemnity Co. v. Swearinger*, 169 Cal. App. 3d 779 (Cal. Ct. App. 1985). The California Court of Appeals found that the term "borrow" was susceptible to two reasonable interpretations in the context of an automobile insurance contract. The court acknowledged that "borrow" could require that the purported borrower, a school district, exercise "dominion and control" over the vehicle. *Id.* at 785–86. It also thought it possible that the school district "borrowed" the vehicle when it "properly gain[ed] the use of a third party's vehicle," regardless of whether the district had dominion over the vehicle. *Id.* at 785. The district court in *Westfield* characterized this definition of "borrow" as "confer[ing] a benefit" regardless of actual possession. *Westfield Ins. Co. v. Young*, No. 11-275, 2012 WL 5421145, at *2 (E.D. Ky. Nov. 6, 2012).

To start, as we noted in *Westfield*, even California courts have rejected *Swearinger* and it is a minority view in other jurisdictions. *Westfield*, No. 12-6523, slip op. at 3. For instance, in *American International Underwriters Insurance Co. v. American Guarantee and Liability Insurance Co.*, 181 Cal App. 4th 616, 629–30 (Cal. Ct. App. 2010), the California Court of Appeals commented, "In our view, the *Swearinger* decision is based on an inadequate definition of 'borrow'" because the opinion did not address the requirement of prior California Supreme Court decisions that the borrower "exercised the requisite dominion and control over the [vehicle] to be a 'borrower'[.]" *Id.* (citing *Home Indem. v. King*, 34 Cal. 3d 803, 813–14 (Cal. 1983)); *but see City of Los Angeles v. Allianz Ins. Co.*, 125 Cal. App. 4th 287, 295 (Cal. Ct. App.

7

2004) (suggesting that "the use of the vehicle for the [named insured's] purposes . . . constituted the [named insured's] exercise of dominion and control over the vehicle").

Further, the *Swearinger* formulation of "borrow" does not support a finding of coverage here. Even the *Swearinger* court stated that "borrow" implies "temporary use." *Swearinger*, 169 Cal. App. 3d at 785. Although Davida's severance package is not part of the record, Curtis' testimony indicates that it included indefinite use of the Mercedes. Thus, even if use of the Mercedes as part of Davida's severance package was a business purpose (Appellant Br. at 33), the fact that the package was indefinite defeats the idea that Omni "borrowed" the Mercedes for this purpose.

The other case we considered in *Westfield* was *Schroeder v. Board of Superiors of Louisiana State University*, 591 So. 2d 342, 346 (La. 1991). That court interpreted "borrow" to mean "not only that one receives the benefit of the borrowed object's use, but also that the borrower receives temporary possession, dominion, or control of the use of the thing." Under this definition, the named insured, a university, did not "borrow" an automobile when a student got into an accident driving a fellow student to run an errand for a school administrator. *Id.* at 344. The situation, the court stated, was similar to a person "us[ing] his auto to pick up a prescription for a sick friend"—the driver "may confer a significant benefit on the invalid, but no one would say that the bedridden friend had borrowed the auto used for the errand." *Id.* at 346. Similarly here, while Omni may have been honoring its severance package, the benefit from the Mercedes's use at the time of the accident accrued only to Davida herself, who was running a personal errand in California at the time of the accident. *See Westfield,* No. 12-6523, slip op. at 4 ("The College received a benefit from [the] truck only in its use as a teaching aid, not in its transportation to and from the College.").

Additionally, under the *Schroeder* analysis, Omni did not have "temporary possession, dominion, or control of the use of" the Mercedes at the time of the accident. Omni is headquartered in Kentucky, while Davida's use of the Mercedes occurred entirely in California. Davida was using the Mercedes as her personal vehicle. Davida was no longer employed by Omni at the time of the accident. Instead, she had started her own clothing and jewelry business at that point. And no record evidence suggests that the severance package included any terms limiting her use of the Mercedes, or any terms allowing Omni to demand the return of the vehicle. Blake's argument that Omni remained in "constructive control" of the vehicle and had the "right to direct the use of the vehicle" (Appellant Br. at 34) is therefore unpersuasive. *See Westfield*, No. 12-6523, slip op. at 4 (finding that the College "did not have the right to direct the use of [the] truck . . . [because] the college did not have an official policy regarding the transportation of live-project vehicles to and from the College").

Blake seeks to extend Omni's purported status as a borrower during Davida's employment through Kentucky's "initial permission" doctrine. That doctrine determines "whether a non-owner's use of a vehicle exceeds the scope of permission given to that person." *Mitchell v. Allstate Ins. Co.*, 244 S.W.3d 59, 65 (Ky. 2008). It "allows for coverage even if the use of the vehicle was 'not within the contemplation of the parties or was outside any limitations placed upon the initial grant of permission.'" *Id.* at 62 (citing 46 C.J.S. *Insurance* § 1053 (1993)). In adopting the doctrine, the Kentucky Supreme Court held, "as long as permission is initially given to a person to use a vehicle, insurance coverage may extend to subsequent vehicle users through the language of the [Policy's] omnibus clause as long as those subsequent users have permission from the initial borrower to use the vehicle." *Id.* at 65.

The problem with *Mitchell* is that the policy at issue did not contain the same "own, hire, or borrow" language as the policy here does. The policy in *Mitchell* defined "insured person" as,

> 1. You and any resident relative; 2. Any other person while in, on, getting into or out of an insured auto with your permission; 3. Any other person who is legally entitled to recover because of bodily injury to you, your resident relative, or an occupant of your insured auto with your permission.

*Id.* at 61 n.1. By contrast, Omni's policy defined an "insured" as: "You for any covered 'auto'. b. Anyone else while using with your permission a covered 'auto' you *own, hire or borrow . . . .*" (R. 69-2, PID 843, 863 (emphasis added).) Thus, the initial permission doctrine may apply to permissive use of cars that Omni owned, hired, or borrowed. But, as discussed, the Mercedes was not such a car.

In short, whether or not Blake's proposed definitions of "borrow" are reasonable, the facts of this case do not satisfy any of them. Omni was not a "borrower" of the Mercedes at the time of the accident. Therefore, coverage is not available under the Policy.

## B.

Blake also argues that Kentucky's "reasonable expectations" doctrine supports a finding of coverage. "The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528, 541 (Ky. 2005). Generally, this principle "pertains to alleged ambiguities within the policy," *id.*, and directs, "[w]here a person has paid a premium for a policy, the policy should not be read technically to avoid paying benefits," *Ky. Emp'rs' Mut. Ins. v. Ellington*, 459 S.W.3d 876, 883 (Ky. 2015) (citing *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 837 (Ky. 2005)). "The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic

and complex contract terms which limit benefits to the insured." *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 213 (Ky. 1986) (quoting R.H. Long, *The Law of Liability Insurance* § 5.10B).

Blake emphasizes that "Omni specifically listed the 1999 Mercedes on the Selective Policy as a covered automobile" and "paid a premium commensurate with that listing[.]" (Appellant Br. at 36.) But that fact, although going to the equity aspect of the doctrine, does not show that another requirement of the doctrine is met: that the term "borrow" is ambiguous. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003), as amended (Apr. 2, 2003) ("The reasonable expectation doctrine 'is based on the premise that policy language will be construed as laymen would understand it' and applies only to policies with ambiguous terms—e.g., when a policy is susceptible to two (2) or more reasonable interpretations." (citations omitted)). And even if we were to find, as the *Swearinger* court did, that the term "borrow" is subject to two reasonable interpretations, thus triggering the reasonable expectations doctrine, based on the reasons already given, there is no interpretation of "borrow" that could have given rise to a reasonable expectation that Selective extend coverage to Davida's accident. Thus, the reasonable expectations doctrine does not save Blake's argument.

**IV.**

For the foregoing reasons we affirm the district court's order.

**HELENE N. WHITE, Circuit Judge, dissenting.** I respectfully dissent. The only issue regarding coverage is whether Omni was borrowing the Mercedes from the Sullivans at the time of the accident. Curtis Sullivan's uncontroverted testimony establishes that he and Sharon loaned the Mercedes to Omni in 2007. Omni then specifically listed the Mercedes as a scheduled auto on the Selective Policy, paying an additional premium to do so. Curtis submitted a Kentucky Certificate of Registration to Selective's agent, disclosing that Curtis and Sharon owned the Mercedes. (PID 587.) After paying the additional premium for two years, in 2009, Omni provided permission to Davida to drive the Mercedes. Once Davida left the company, with Omni still paying the additional premium on the Mercedes, Omni continued allowing Davida to use the Mercedes as part of a severance package. Under these circumstances, a reasonable jury could find that Omni was borrowing the Mercedes from the Sullivans at the time of the accident.

The cases relied upon by the majority are distinguishable. In *Westfield*, a college student borrowed the truck for a live classroom project, and the truck's owner allowed the student to drive the truck to and from the college. *Westfield Ins. Co. v. Young*, No. 12-6523, slip op. at 4 (6th Cir. Sept. 9, 2013). The accident occurred after the classroom project was completed, and thus after the college's use of the vehicle for the classroom project had ended. *Id.* (explaining that the college "did not have the right to direct the use of Nelson's truck after the live classroom project was completed"). Here, a reasonable jury could find, based on Curtis's testimony, that Omni gained the use of the Mercedes for its purposes when it borrowed the Mercedes from the Sullivans, and that Omni continued to use the Mercedes for its purposes while Davida was driving it as an employee and after Davida's employment ended as part of her severance package.

12

In *Schroeder*, the court held that the university's receipt of a benefit alone was not sufficient to show that it had borrowed a vehicle from a student who was retrieving ice for a school function at a faculty member's request, because at no point did the university have possession, dominion, control, or the right to control the use of the vehicle. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So. 2d 342, 346 (La. 1991). Here, a reasonable jury could find that Omni had the right to control the Mercedes because Davida's use of the Mercedes was permissive and pursuant to a severance package that Omni provided Davida. Further, Omni paid the premium on the vehicle indicating that it exercised some degree of dominion and control over the vehicle and recognized some responsibility.

Moreover, although I agree that borrowing must be temporary, I do not agree that the lack of testimony regarding a specific end date for Davida's use of the vehicle means that Omni was not borrowing the Mercedes. "[A] 'borrowing' may be for an indefinite period of time and may in fact last until either the insured decides to return the automobile or the lender requests its return." 8A Couch on Ins. § 118:50 (citing *Am. Indem. Ins. Co. v. Code Elec. Corp.*, 760 P.2d 571, 574 (Az. Ct. App. 1988)). Given Curtis's unrebutted testimony that he and Sharon lent the Mercedes to Omni, a reasonable jury could find that the Sullivans could have demanded its return at any time, and that Omni likewise could have demanded the return of the Mercedes from Davida, subject to any claims for breach of the severance agreement.

Because a reasonable jury could find that Omni was borrowing the Mercedes from the Sullivans at the time of Davida's accident, I would reverse the district court's judgment in favor of Selective. However, given the lack of specificity regarding the terms of the severance package, and Omni's discovery responses indicating that it had no control over, and received no

benefit from, Davida's use of the Mercedes at the time of the accident,[1] a reasonable jury could also find that Omni was not borrowing the Mercedes at the time of the accident. Accordingly, I would remand for further proceedings.

Selective also argues that, even if the Policy provides coverage, the Policy conditions limit such coverage to state-required minimum limits because Omni failed to disclose information regarding the location, driver, and use of the Mercedes. The Policy provides that the Business Auto Coverage Form is void "in any case of fraud by [Omni] at any time" and "if [Omni] or any other 'insured', at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning . . . the covered 'auto;' [or Omni's] interest in the covered 'auto.'" (PID 193–94.) This condition is later amended by an endorsement to provide that in the event of concealment, misrepresentation, or fraud, Selective will only provide coverage up to the minimum limits of liability required in Kentucky. (PID 200–01.) However, Selective points to no evidence of intentional misrepresentation or concealment; nothing in the record establishes that Selective requested an updated drivers list or garage location after Davida began using the Mercedes in California. Accordingly, Selective has not supported the grant of summary judgment on this basis.

For these reasons, I would reverse the grant of summary judgment in favor of Selective and remand for further proceedings.

---

[1] The meaning of Omni's discovery responses is open to interpretation, and may merely mean that it had no control over Davida's decisions regarding where and how to drive the Mercedes and derived no benefit from her shopping trip.