**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1087

_____

CONTINENTAL CASUALTY CO.,
Appellant
v.

PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:17-cv-04183)
District Judge: Honorable Mitchell S. Goldberg

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 18, 2022.

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: November 22, 2022)

_____

**OPINION**[*]

_____

Krause, *Circuit Judge*.

Continental Casualty Co. (Continental) appeals the judgment of the District Court

in favor of Pennsylvania National Mutual Casualty Insurance Co. (Penn). We will affirm.

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

# I.    BACKGROUND

This case arose out of an accident involving employees of Penn's insured, Shady Maple Smorgasboard, Inc. (Shady Maple), and Continental's insured, Sight & Sound Ministries, Inc. (Sight & Sound).  Kathryn Marquet-Sandt—an employee of Shady Maple—planned to attend a trade show.  Because William Luckenbaugh planned to do the same for his employer, Sight & Sound, he suggested that they travel together in Sight & Sound's company car, and accepted Marquet-Sandt's offer to do the driving for the first hour and a half.  At that point, Luckenbaugh told her to pull over at a nearby McDonald's so he could use the bathroom and take over the driving.  But in attempting to find the exit, Marquet-Sandt collided with a motorcyclist named Jeremy Esakoff.

Esakoff sued Marquet-Sandt for negligence and Shady Maple and Sight & Sound for vicarious liability, and the parties eventually settled for $10 million.  While Continental contributed $8.7 million towards the settlement, Penn refused to pay any portion.

Continental filed this action against Penn, seeking equitable contribution and a declaratory judgment that Penn's insurance of Shady Maple obligated Penn to provide funds for the *Esakoff* settlement.  Both of Shady Maple's policies with Penn included clauses covering "[a]nyone else while using with your [Shady Maple's] permission [any] 'auto' you own, hire, or borrow . . . ."  App. 7.  So to determine if Marquet-Sandt was insured by Penn, the District Court held a bench trial on whether Shady Maple, acting through Marquet-Sandt, "borrowed" Sight & Sound's vehicle for purposes of those coverage provisions.  Concluding that it did not, the District Court held that Marquet-Sandt was not an insured under Penn's policies at the time of the accident and that Continental

2

was therefore not entitled to equitable contribution.

In a motion to amend the judgment, Continental argued that Penn's coverage of Marquet-Sandt was not dispositive because Penn's policies, in any event, covered her employer, Shady Maple. Although the District Court granted Continental's motion, it *sua sponte* reentered judgment in Penn's favor, reasoning that equitable contribution was still unwarranted as Shady Maple would be entitled to full indemnity from Marquet-Sandt for any liability to Esakoff.

## II.   DISCUSSION[1]

### A.   Marquet-Sandt's Status Under the Penn Policies

Continental challenges the District Court's ruling that Marquet-Sandt was not insured by Penn at the time of the accident because Shady Maple, through the actions of Marquet-Sandt, did not "borrow" the Sight & Sound car. But the District Court correctly interpreted the Penn policies.

Recognizing that Pennsylvania courts have not yet expressed a clear view on the precise meaning of "borrow" in insurance coverage provisions, the District Court surveyed other jurisdictions' interpretations of that term and identified two competing approaches: a minority of courts define borrowing as the temporary use of an object for the benefit of the

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. When assessing a district court's decision in a bench trial, we review the court's "findings of fact for clear error and its conclusions of law *de novo*." *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 100 (3d Cir. 2015) (citation omitted). By contrast, our review of a *sua sponte* summary judgment "is plenary, and we apply the same standard as the [d]istrict [c]ourt," viewing all facts in the light most favorable to the party against whom judgment was rendered. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citation omitted).

borrower;[2] but the majority require, in addition, that the borrower obtain possession, dominion, or control over the object.[3] The District Court concluded that Pennsylvania courts would most likely adopt the majority position, and we agree. That approach avoids the minority interpretation's overbreadth. *See Schroeder*, 591 So. 2d at 346 ("When a person uses his auto to pick up a prescription for a sick friend, he may confer a significant benefit on the invalid, but no one would say that the bedridden friend had borrowed the auto used for the errand."). Thus, even the judiciary of California, which first articulated the minority view, *see Swearinger*, 214 Cal. Rptr. at 386, has since repudiated it, *see Am. Int'l Underwriters Ins. Co. v. Am. Guarantee & Liab. Ins. Co.*, 105 Cal. Rptr. 3d 64, 73–74 (Ct. App. 2010).

Under the majority approach, Shady Maple, acting through Marquet-Sandt, did not "borrow" the Sight & Sound vehicle because she never acquired possession, dominion, or control. Put differently, she did not *take* the car from Luckenbaugh because he never *relinquished* it to her. *See NGM Ins. Co. v. Pillsbury*, 416 F. Supp. 3d 57, 65 (D. Mass. 2019); *Hanneman*, 575 N.W.2d at 452. Rather, Luckenbaugh remained in the car, dictated its ultimate destination, and directed Marquet-Sandt to pull over. That Marquet-Sandt was

---

[2] *See Andresen v. Emps. Mut. Cas. Co.*, 461 N.W.2d 181, 185 (Iowa 1990); *Travelers Indem. Co. v. Swearinger*, 214 Cal. Rptr. 383, 386 (Ct. App. 1985).

[3] *See Farmers All. Mut. Ins. Co. v. Ho*, 68 P.3d 546, 549 (Colo. App. 2002); *Hanneman v. Cont'l W. Ins. Co.*, 575 N.W.2d 445, 452 (N.D. 1998); *Davis v. Cont'l Ins. Co.*, 656 N.E.2d 1005, 1008 (Ohio Ct. App. 1995); *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So. 2d 342, 346 (La. 1991); *Reliance Ins. Co. v. Lexington Ins. Co.*, 361 S.E.2d 403, 406 (N.C. Ct. App. 1987); *F & M Schaefer Brewing Co. v. Forbes Food Div., Chem. Leaman Tank Lines, Inc.*, 376 A.2d 1282, 1287 (N.J. Super. Ct. Law Div. 1977); *Liberty Mut. Ins. Co. v. Am. Emps. Ins. Co.*, 556 S.W.2d 242, 244–45 (Tex. 1977).

sharing in the driving does not compel the contrary conclusion. *See Hanneman,* 575 N.W.2d at 452; 8A Steven Plitt et al., *Couch on Insurance* § 118:50 (3d ed. 2022).

As Shady Maple, through the actions of Marquet-Sandt, did not "borrow" the Sight & Sound car, the District Court correctly ruled that she was not insured under Penn's policies at the time of the accident.

### B. The *Sua Sponte* Judgment

Continental next objects that the District Court's *sua sponte* judgment violated Federal Rule of Civil Procedure 56(f) because the Court did not provide "notice and a reasonable time to respond" before issuing its ruling. Fed. R. Civ. P. 56(f). That was indeed error, but inadequate notice alone does not entitle Continental to relief. Rather, we have recognized "an exception to the notice requirement of Rule 56 in those cases where summary judgment is granted *sua sponte*" when three conditions are met: "(1) the point at issue is purely legal; (2) the record was fully developed[;] and (3) the failure to give notice does not prejudice the party[.]" *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004).

This exception applies here because the viability of Continental's equitable-contribution claim depended on undisputed facts and thus presented a purely legal issue, *see In re Visual Indus., Inc.*, 57 F.3d 321, 324 (3d Cir. 1995); the record was fully developed; and there was no prejudice, as the factual and legal points Continental now contends it would have made would not entitle it to relief in any event, *see Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 224 (3d Cir. 2009). Specifically, the facts Continental allegedly would have highlighted were either explicitly considered by the

District Court in granting *sua sponte* judgment[4] or were not relevant to that ruling.[5]

The handful of legal arguments Continental purportedly would have raised fares no better. First, it contends that Shady Maple is not entitled to indemnification from Marquet-Sandt because Shady Maple did not provide funds for the *Esakoff* settlement, but the District Court merely observed—correctly—that Shady Maple would be entitled to indemnification from Marquet-Sandt for any liability in the *Esakoff* suit, and exercised its considerable discretion in balancing the equities between Continental and Penn.[6] *See* 30A C.J.S. *Equity* § 5 (2022). Second, Continental's assertion that Shady Maple was primarily liable for the accident ignores the distinction between the primary liability of Marquet-Sandt as the tortfeasor-agent and the secondary liability of Shady Maple as the principal. *See Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 597–98 (Pa. 2012). And third, Continental's ratification argument fails because ratification is relevant to whether a principal can be held liable for the acts of its agent, not whether indemnification is proper. *See Alumni Ass'n, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 535 A.2d 1095, 1100 n.2 (Pa. Super. Ct. 1987), *aff'd*, 572 A.2d 1209 (Pa. 1990).

---

[4] The District Court expressly observed, for instance, that Shady Maple remained a defendant in the *Esakoff* action when it settled, that Penn insured Shady Maple, that Penn did not participate in the *Esakoff* negotiations nor contribute funds towards the settlement, and that Continental paid $8.7 million to settle the *Esakoff* suit. App. 24–25.

[5] For example, neither Shady Maple's failure to file a crossclaim for indemnity in *Esakoff*, which did not impair Shady Maple's ability to seek indemnity from Marquet-Sandt, *see MIIX Ins. Co. v. Epstein*, 937 A.2d 469, 472 (Pa. Super. Ct. 2007), nor Shady Maple's exposure in excess of its insurance coverage, has any bearing on the District Court's reasoning.

[6] Continental's related argument that subrogation would be impermissible fails for the same reason.

Finally, Continental's arguments concerning public policy and the unclean hands doctrine[7] are unpersuasive. "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest," *Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 760 (Pa. 1994) (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)), and Pennsylvania law has long recognized a vicariously liable principal's right to indemnity from its tortfeasor-agent, *see Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951). Unclean hands requires an inequitable act that "is directly connected with the matter in controversy," *Stauffer v. Stauffer*, 351 A.2d 236, 244 (Pa. 1976) (citation omitted), but Continental does not identify an inequitable act directly related to Shady Maple's right to indemnification.[8]

As Continental was not prejudiced by the *sua sponte* judgment, the exception to Rule 56(f)'s notice requirement is satisfied. *See Gibson*, 355 F.3d at 219.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[7] Continental also raises bad faith as a separate equitable defense, but bad faith is a component of unclean hands. *See Jacobs v. Halloran*, 710 A.2d 1098, 1103 (Pa. 1998) (quoting *Shapiro v. Shapiro*, 204 A.2d 266, 268 (Pa. 1964)).

[8] The two acts discussed by Continental miss the mark. Though Continental alleges Shady Maple and Penn misled Marquet-Sandt into believing she was covered by Shady Maple's policies with Penn, warning Marquet-Sandt that she was not insured by Penn at the time of the accident would not have altered the fact that she was a sole active tortfeasor from whom Shady Maple, as the vicariously liable principal, could seek indemnity. Similarly, Continental asserts that Shady Maple and Penn promised not to sue Marquet-Sandt, but Pennsylvania law permits courts to impose indemnity by molding verdicts even when a principal has not filed a claim against its agent. *Ragan v. Steen*, 331 A.2d 724, 731 (Pa. Super. Ct. 1974).